## HYDE *v.* WOODS.

1. A provision in the constitution of a stock and exchange board, whose members are limited in number, and elected by ballot, that a member, upon failing to perform his contracts, or becoming insolvent, may assign his seat to be sold, and that the proceeds shall, to the exclusion of his outside creditors, be first applied to the benefit of the members to whom he is indebted, — the purchaser not becoming a member, nor having the right to transact business in the board until he shall be elected by ballot, — is neither contrary to public policy, nor in violation of the Bankrupt Act.

2. Membership of the board is not a matter of absolute sale. Although property, it is, when purchased, qualified and incumbered by conditions which the creators of it had the right to impose, and a compliance with which is necessary to obtain it.

3. *Nicholls, Assignee,* v. *Eaton,* 91 U. S. 716, reaffirmed.

ERROR to the Circuit Court of the United States for the District of California.

The facts are stated in the opinion of the court.

*Mr. Edward B. Merrill* for the plaintiff in error.

No counsel appeared for the defendant in error.

MR. JUSTICE MILLER delivered the opinion of the court.

The San Francisco Stock and Exchange Board is a voluntary

association for business purposes, organized in 1862, in that city. The membership is elective, with certain provisions for a right to sell and assign the seat, subject to an election of the purchasing member by the board. This is generally done, unless special reasons appear to the contrary; and the result is, that, as the number of members is limited, the right to a seat at the board has a moneyed value. When a member fails to perform his contracts, or becomes insolvent, he can no longer be a member of the board, until he resumes payment; but his seat may be sold for his benefit, or for that of his creditors, among the other members of the board.

Art. 15 of the constitution of the board provides that, "in sales of seats for account of delinquent members, the proceeds shall be applied to the benefit of the members of this board exclusive of outside creditors, unless there shall be a balance after payment of the claims of members in full."

Thomas W. Fenn, who became a member of this board Oct. 21, 1871, was declared a bankrupt Oct. 1, 1872, and plaintiff in error was appointed his assignee. On the twenty-fourth day of August preceding, Fenn became a delinquent, by failing to fulfil his contracts with members of the board, and thereupon made and delivered to defendants in error an assignment of his seat in said board, with authority to sell the same to the best advantage, and apply the proceeds of sale to the payment of all debts due from him to the members of said board. They did sell it for $10,000; the purchaser was duly elected and installed, and the money paid to creditors, who were members of the board, including $2,973.30 to defendants.

Upon these facts, found by the Circuit Court, sitting without a jury, the counsel for plaintiff asks a reversal of the judgment of that court in favor of defendants, on the ground that the assignment by Fenn to the defendants, and their receipt and disbursement of the $10,000, were preferences within the meaning of the bankrupt law, and that they are, therefore, liable to him as assignee for the amount received.

There can be no doubt that the incorporeal right which Fenn had to this seat when he became bankrupt was property, and the sum realized by the assignees from its sale proves that it was valuable property. Nor do we think there can be any

reason to doubt that, if he had made no such assignment, it would have passed, subject to the rules of the stock board, to his assignee in bankruptcy, and that if there had been left in the hands of the defendants any balance after paying the debts due to the members of the board, that balance might have been recovered by the assignee.

It is very ingeniously argued by counsel for the assignee, that, being property of the bankrupt, he had no right to make the disposition of it which he did, by preferring his creditors who were members of the board to those who were not. The answer to this, so far as Fenn's assignment to defendants is concerned, is, that the part of it which gives this direction to the proceeds of the sale was wholly unnecessary and nugatory; for if the article of the association which we have cited in full was effective, it controlled the disposition of those proceeds; if it is void, or for any other reason ineffectual, then it must be conceded that the assignment of Fenn was an unlawful preference, within the meaning of the bankrupt law. The question turns solely upon the validity of that article of the association.

There is no reason why the stock board should not make membership subject to the rule in question, unless it be that it is a violation of some statute, or of some principle of public policy. It does not violate the provision of the bankrupt law against preference of creditors, for such a preference is only void when made within four months previous to the commencement of the bankrupt proceedings. Neither the bankrupt law nor any principle of morals is violated by this provision, so far as we can see. A seat in this board is not a matter of absolute purchase. Though we have said it is property, it is incumbered with conditions when purchased, without which it could not be obtained. It never was free from the conditions of article 15, neither when Fenn bought, nor at any time before or since. That rule entered into and became an incident of the property when it was created, and remains a part of it into whose hands soever it may come. As the creators of this right — this property — took nothing from any man's creditors when they created it, no wrong was done to any creditor by the imposition of this condition.

The fundamental vice of plaintiffs' argument is to treat the

case as though Fenn, owning this property absolutely as his own without restriction, had then fettered it, of his own accord, with the condition that it must always stand incumbered by a preferred lien to his fellow-members.

It is said that it is against the policy of the bankrupt law, against public policy, to permit a man to make in this or any other manner a standing or perpetual appropriation of his property to the prejudice of his general creditors; and it is to this point that the numerous authorities of counsel are cited. They all, however, relate to cases where a man has done this with property which was his own, — property on which he himself imposed the direction, or the incumbrance, which impeded creditors.

It is quite different where a man takes property by purchase or otherwise, which is subject to that direction or disposition when he receives it. It is no act of his which imposes the burden. It was imposed by those who had a right to do it, and to make it an accompaniment of any title which they gave to it.

The principle here contended for by counsel was well considered in the recent case of *Nicholls, Assignee,* v. *Eaton,* 91 U. S. 716. In that case, the mother of the bankrupt, Eaton, had bequeathed to him by will the income of a fund, with a condition in the trust that on his bankruptcy or insolvency the legacy should cease and go to his wife or children, if he had any, and if not, it should lapse into the general fund of the testator's estate, and be subject to other dispositions. The assignee of the bankrupt sued to recover the interest bequeathed to the bankrupt, on the ground hat this condition was void as against public policy.

But this court, on a full examination of the authorities, both in England and this country, held that the objection was not well taken; that the owner of property might make such a condition in the transfer of that which was his own, and in doing so violated no creditor's rights and no principle of public policy.

The case of *Nicholson, Assignee,* v. *Gouch,* 5 El. & Bl. 999, was in many respects very much like the present, the action having been brought to recover certain property which, under

the rules of the exchange, of which the bankrupt was a member, had been received and paid to his fellow-members. This was asserted to be a preference void by the bankrupt law; and the rules of the exchange, under which it was done, were assailed on the same ground taken here. It is true that, in the decision of the Queen's Bench in bank, Lord Campbell, the Chief Justice, ruled against the plaintiff, on the ground that the money in question arose out of wagering contracts, which, as they could not have been enforced by the bankrupt, were, therefore, not subject to the claim of the assignee. But Crompton, J., held, also, that the money being received and distributed under the rules of the stock exchange, by reason of the bankrupt having become a member subject to said rules, this was a sufficient defence to the party who so received and distributed it.

*Judgment affirmed.*