Edward C. Eliot, Respondent, *v.* Merchants' Exchange et al., Appellants.

### October 23, 1883.

1. Equity—Creditor's Bill.—Certificates of membership in the Merchants' Exchange of St. Louis are property, and (subject to the rules of the Exchange) are liable for the debts of the owner, and may, by creditor's bill, be subjected to the payment of a judgment-creditor.

2. —— Injunction—Execution.—A debtor member of the Exchange may in a proceeding in which he and the Exchange are joined, be restrained from disposing of his certificate of membership, and may be compelled to transfer the certificate to such purchaser at sheriff's sale as possesses the qualifications of membership in the Exchange.

Appeal from the St. Louis Circuit Court, Thayer, J. *Affirmed.*

Overall & Judson, and Broadhead & Haeussler, for the appellants: A membership in the Merchants' Exchange is not property. — *In re Sutherland,* 6 Biss. 576 ; *Thompson* v. *Adams,* 93 Pa. St. 55 ; *Pancoast* v. *Cowen,* 93 Pa. St. 66. And can not be subjected to the payment of a creditor by a creditor's bill. — *Show* v. *Aveline,* 5 Ind. 384 ; *Stewart* v. *English,* 6 Ind. 176.

Edward C. Eliot, *pro se,* Geo. W. Taussig, and David Goldsmith, for the respondent : The right of membership in the Merchants' Exchange of St. Louis is a " right of property," and is " property." — *Powell* v. *Waldron,* 26 Alb. L. J. 32 ; *Hyde* v. *Woods,* 94 U. S. 523 ; *In re Ketchum,* 1 Fed. Rep. 840 ; *Smith* v. *Barclay,* 21 Am. L. Reg. 408 ; *Ritterband* v. *Bagget,* 4 Abb. (N. C.) 67. The right

of membership in the Exchange, although a " right of property " and " property " is not subject to execution, attachment, or garnishment, in an action at law. — *Thompson* v. *Adams,* 93 Pa. St. 55 ; *Pancoast* v. *Gowen, Id.* 66. But, like a right to letters-patent, can be reached only by process of a court of equity, after all legal remedies have been exhausted. — *Ager* v. *Murray,* 105 U. S. 126 ; Dos Passos on Stockbrokers, 87, etc., and cases cited. And equity will aid the creditor in reaching the property of the debtor and furnish the remedy when the strict rules of legal practice fail, without showing fraud or " any other recognized ground of equitable jurisdiction." — *Pendleton* v. *Perkins,* 49 Mo. 565 ; *Turner* v. *Murray,* 46 Mo. 95, 99 ; *Beal* v. *McVicker,* 3 Mo. App. 592. The rule requiring transfers to be made with the " approval of the board of directors " does not affect the plaintiff's right to subject this membership to his judgment claim. The right to impose this restriction upon the transfer of shares " frequently happens in corporations." — 1 Lindley on Partnership, etc., * 702; *Penny's Case,* 8 Chanc. App. 446 ; *Robinson* v. *Bank, etc.,* 1 Eq. 32. But the right to impose this restriction by a by-law depends upon express authority in the charter, and in the absence of such express authority, the by-law is void. — Morawetz on Corporations, sect. 321; *Moore* v. *Bank,* 52 Mo. 377; *Chouteau* v. *Harris,* 20 Mo. 382. Such express authority is not given to the Merchants' Exchange of St. Louis.

BAKEWELL, J., delivered the opinion of the court.

This was a proceeding by a judgment-creditor of defendant Schieferdecker, to expose to sale, in satisfaction of plaintiff's judgment, a certificate of membership of Scheiferdecker in the Merchants' Exchange of St. Louis.

On hearing, the circuit court made a decree that plaintiff is entitled to subject a certificate of membership, No. 2394; issued by said Exchange to said Scheiferdecker to sale

in satisfaction of plaintiff's demand and directing the defendants to deliver the certificate to the sheriff, and directing the sheriff to advertise and sell the same* in the manner provided by law for making sales under execution of personalty, and to apply the proceeds to the payment of plaintiff's demand, which is ascertained to be $16,701.19, defendants are also enjoined from transferring the certificate, otherwise than specified in the order of court, which further directs Scheiferdecker, within five days from the sale of the certificate, to execute an assignment to the purchaser, according to the form of the certificate indorsed thereupon.

On the hearing, certain acts of the legislature and rules of the Merchants' Exchange were offered in evidence. These are not copied in the bill of exceptions, but the bill stipulates that counsel may, in this court, introduce a certain book of the rules of the Exchange which was introduced on the hearing below, and which contains all these documents. This book does not appear to be filed with the transcript, nor have we seen it. But there seems to be no dispute about its contents; and, for the purposes of this opinion, we shall assume that these acts and rules, so far as needed, are correctly set forth in the briefs of counsel.

It appears from the pleadings and evidence, that plaintiff is the assignee of a judgment rendered in December, 1876, in the St. Louis circuit court against Scheiferdecker for $10,666.74, which is unpaid; and that Scheiferdecker has no property subject to execution, if his membership in the Exchange be left out of question. Scheiferdecker is, and since 1873 has been, a member in good standing of the Merchants' Exchange of St. Louis. His dues are paid. A certificate of membership in the Exchange has been duly issued to him, and is in the hands of the secretary of the Exchange for delivery to him. This certificate, No. 2394, is sealed with the seal of the Exchange and signed by its president and secretary; and sets forth that Scheifer-

decker is, on the date named (3d of January, 1882), a member of the Exchange in regular standing; that the membership is subject to annual assessments, and is transferable, on payment of all assessments and a transfer fee of $5, on the books of the corporation to any person approved by the board of directors, on surrender of the certificate. The transfer is to be made according to a form indorsed on the certificate, which purports to transfer the membership subject to the rules of the Exchange, provided that the membership is not found to be forfeited or impaired. The members of the Exchange have the privilege of admission to its floors to transact business, the right of taking part in, and voting at, all deliberations of the Exchange, and the benefit of its market reports and other information. Scheiferdecker is a commission merchant. He was a member before any rule was adopted authorizing transfer of membership. He paid for his membership an initiation fee of $10 and an assessment of $25. The Exchange holds three daily sessions. Its transactions embrace nearly all business in certain lines, specially breadstuffs and provisions. There were at the date of the hearing three thousand five hundred and sixty-five members of the Exchange. The market reports from Liverpool and from leading American cities are daily posted on the building of the Exchange. The revenue of the Exchange is from assessments of its members: $20 from each member per year; rent of chairs, $600; rent of telegraph counters, $800; and interest upon government bonds owned by the Exchange, which, last year, amounted to $10,000. The income exceeds the expenses, and the surplus goes to the reserve fund, which is about $350,000. The market value of certificates of membership varies. Their highest value, during the year preceding April, 1882, was $525; and their lowest, $215. The average attendance on Exchange, is about one thousand two hundred persons. The business of commission merchants requires them to attend almost daily.

The Merchants' Exchange of St. Louis was originally a voluntary association, the objects of which, as expressed in the preamble, were to promote the manufacturing and commercial interests of St. Louis, inculcate just principles of trade, maintain uniformity of commercial usage, acquire, preserve, and disseminate business information, and adjust controversies between merchants. It was incorporated in 1863, and the charter was amended in 1865 and again in 1875. It has power to receive and hold and dispose of real and personal property. It is admitted that the privileges of membership are, by the rules, such as are common to mercantile organizations of similiar character. Under rule X., new members are admitted upon written application, with references as to business character and standing, and only on a favorable report of the committee of membership and the approval of the board of directors. The member may be suspended or expelled for violation of rules of the Exchange. Before January, 1882, there was no rule providing for transfer of membership, and every new member had to pay an initiation fee for himself, whether an old member was retiring or not. On January 1, 1882, and before the commencement of the present proceeding, a rule was adopted to the effect that "members of the Exchange, on and after this date, shall be entitled to certificates of membership, which shall be transferable on payment of all assessments due, and a transfer fee of five dollars; subject, however, to the recommendation of the committee on membership, and the approval of the board of directors."

The question presented by the record is one that has arisen of late years and as to which the authorities are not in accord. It is, whether the seat of a member of a merchants' exchange, such as is established in the large centres of commerce, and having a constitution and rules such as usually govern these exchanges and stock exchanges in America; is a species of property which, if not subject to execution by the ordinary process without the intervention of equity, may by proper

proceedings on the part of a judgment-creditor, be subjected to sale, and the proceeds applied towards the satisfaction of the judgment, the debtor being compelled to make a transfer, and the exchange to ratify it in accordance with its rules in other cases.

The question seems to have been first considered in the district court for the northern district of Illinois, on argument of a motion for a rule on a bankrupt, a member of the Chicago board of trade, that he assign and transfer to the assignee his certificate of membership in the board. *In re Sutherland*, 6 Biss. 526. The board of trade, in that case, was incorporated, its objects were similar to those of the Merchants' Exchange of which the defendant in the case at bar is a member. As in the present case, membership conferred no pecuniary profit upon the member, except what was derived from the incidental use made of his privilege of membership by the member. Persons were admitted to membership by ballot—a vote of two-thirds being requisite to elect—and were liable to expulsion for violation of the rules, or dishonorable conduct. The admission fee was $1,000. A member in good standing might transfer his certificate to any person eligible, after ten days' notice, approved by a vote of two-thirds of the directors. The selling value of the membership was $500, where buyer and seller could comply with the conditions. It was held, that this membership confers no property rights, represents no interests in property, and conferred privileges similar only to those given by membership of a club or lodge. As the certificate expressed nothing that the assignee could use, except by consent of others, in the absence of authority, and from these supposed analogies, the learned judge determined that the bankrupt's membership can not be treated as a portion of his assets or pass to his assignee, and the motion was denied.

In the same year, the case of *Hyde* v. *Woods* was decided in the supreme court of the United States (94 U. S. 523). The case was this: The San Francisco stock and exchange board was a voluntary association, whose objects are ex-

pressed by its name. The members were elected by ballot and limited in number. The constitution provided that a member, on failing to perform his contracts, or becoming insolvent, may assign his seat to be sold, and the proceeds, to the exclusion of his outside creditors, shall be first applied for the benefit of members to whom he was indebted; the purchaser does not become a member until elected by ballot. It was held that this provision is not contrary to public policy or to the bankrupt act. Judge Miller, in delivering the opinion of the court, says: "There can be no doubt that the incorporeal right which Fenn had to this seat, when he became bankrupt, was property; and the sum realized by the assignee," ($10,000), "from its sale proves that it was valuable property. Nor do we think there can be any reason to doubt, that if he had made no such assignment, it would have passed, subject to the rules of the stock board, to his assignee in bankruptcy; and that if there had been left in the hands of the defendants any balance, after paying the debts due to the members of the board, that balance might have been recovered by the assignee."

Following this case, it was held, in 1877, by the New York superior court at special term, (*Ritterband* v. *Baggett*, 4 Abb. (N. C.) 67), that membership in a board of exchange which has a money value, and is transferable subject to the purchaser's procuring himself to be elected a member, is property, the beneficial interest in which passes to a receiver; and that the receiver may maintain an action to compel the debtor to convey to a member elect with whom the receiver may contract for its sale. The board in question was the New York cotton exchange, an incorporated body. The initiation fees were $5,000. By a by-law, the property could not be assigned to any one but a member or member elect. Other provisions were similar to those noted above in the San Francisco stock exchange.

Three years afterwards the same question came up for consideration in the district court of the United States for

the southern district of New York. It was held that a seat in the New York stock exchange is property which passes to an assignee in bankruptcy, and the court required the bankrupt to make the transfer. The same court had recently decided ( *Gallagher* v. *Lane, in re,* 19 N. B. R. 224) that a license to occupy certain stalls in a New York market, though revocable at the will of the city, and though the city refused to recognize the rights of the assignee in bankruptcy, under the general assignment, passed to the assignee under the bankrupt law, and had made an order compelling the bankrupt to make a special assignment of his license. Judge Choate, in his opinion, says, that the case of the seat in the stock exchange can not be distinguished in principle from the market license case. "As in that case," he proceeds, " the consent of the city was necessary to a transfer, so here the consent of a committee of the stock exchange is necessary to a transfer of this right. The seat, however, has an actual pecuniary value which the rules of the society, as interpreted and applied in practice, permit the holder to realize by a sale and transfer. There is no practical difficulty in effecting a transfer of this right or interest for a pecuniary consideration, subject to the condition that the debts of the present holder to members are first paid ; and the right or privilege is, to all intents and purposes, a business right or privilege, useful for business purposes only. I see nothing in the rules of the exchange which renders it impossible for the seat to be disposed of by the assignee in bankruptcy with the co-operation of the bankrupt, subject to the condition above mentioned." The learned judge then cites *Hyde* v. *Woods* ( *supra* ), as directly in point, and says that if *In re Sutherland* ( *supra* ), can not be distinguished from *Hyde* v. *Woods* ( which seems to be difficult ), it is not to be followed ; and that he is not satisfied with the reasoning in the Gallagher case.

The next cases to be considered, in chronological order, are *Thompson* v. *Adams,* and *Pancoast* v. *Cowan,* reported in ninety-third Pennsylvania Reports (pp. 55 and 66).

These cases decide that a seat in the Philadelphia stock exchange is not subject to levy or sale under an ordinary *fieri facias*. As to this, we suppose there can be no question. The proceeds of the seat, when sold, by the rules of that exchange, go, as was the case in *Hyde* v. *Woods* (*supra*), not to the general creditors of the bankrupt, but, first, to his creditors of the stock exchange. Without the intervention of equity, it is difficult to see how such property could be reached. The Pennsylvania decisions do not go so far as to hold that the seat is not property, but hold that it is not property subject to ordinary process at law.

The question is carefully considered in an opinion of the superior court of Cook County, Illinois, per Gardner, J., reported in twenty-first volume of the American Law Register (p. 408). It is there held that certificates of membership in the board of trade of Chicago are property, and, as such, liable for the debts of the owner on a creditor's bill to subject them to the payment of his debts; and that the debtor will be restrained from disposing of his certificate of membership, and ordered to execute a blank assignment thereof to the receiver appointed in the cause. On appeal, this judgment was reversed by the supreme court (*Barclay* v. *Smith*, 16 C. L. J. 437), which refers expressly to the Pennsylvania cases cited above, and says, generally, that it has been referred to other cases holding a different view, but declines to review these cases, and says that it does not think they establish a correct rule, and that the supreme court of Illinois is not inclined to follow them.

These seems to be all the cases directly in point. To these might be added cases in which patent rights and similar interests have been subjected in equity to the payment of judgments. There can be no doubt that the weight of the authority is, that a seat of a member in a stock board or merchants' exchange is a species of property not subject to ordinary execution, but which may be reached by equity processes in such a way as to respect the rules of the

exchange and the rights of all parties interested, and at the same time, by proceedings in aid of the execution, to compel an insolvent member to transfer his seat under the rules of the board, and apply the proceeds towards the satisfaction of the debt of his judgment-creditor. And this seems to be the view which has the strongest argument in support of it. The law upon the subject, as deduced from an attempt to reconcile the cases with a view to the facts and circumstances of each case, seems to be well set out by a recent text writer, whose treatise upon stock brokers and stock exchange is a valuable contribution to the learning of the profession upon a subject as to which nothing of importance had hitherto been done towards collecting and reviewing the decisions upon the subject scattered through the volumes of reports in England and at home (Dos Passos on Stock Brokers, p. 96). We are of opinion that the decree of the circuit court should be. affirmed; and that no objection can be reasonably made to the sale by the sheriff under the decree, acting under the order of the court in a proceeding such as the one before us, to which the exchange as well as the insolvent member, whose certificate is to be sold, are both parties.

With the concurrence of all the judges, the judgment is affirmed.