### In re GAYLORD et al.

#### (District Court, E. D. Missouri, E. D. November 29, 1901.)

1. BANKRUPTCY—ASSETS OF ESTATE—MEMBERSHIP IN STOCK EXCHANGE.

    A bankrupt's membership in a stock exchange is property, and its money value, subject to the restrictions imposed upon such membership by the laws of the association, constitutes assets of his estate.

2. RULES OF EXCHANGE—EFFECT OF EXPULSION OF MEMBER.

    The constitution of the St. Louis Stock Exchange provides for the expulsion of members who are found guilty of fraud by the governing committee, and that their membership "shall be disposed of by the committee on admissions." There is no provision as to what shall be done with the proceeds, but, in case of the death of a member, the proceeds of his membership are to be used to pay any indebtedness due the association or its members, so far as required for that purpose, the remainder, if any, to be paid to his estate, and, in case of a member's suspension for insolvency and his failure to become reinstated under the rules, his membership is to be sold, and the proceeds paid pro rata to his creditors on the exchange. A firm of brokers, who were members of the exchange, became insolvent, and were adjudged bankrupts. They were subsequently found guilty of fraud by the committee, and were expelled, and their seats sold by the exchange. *Held* that, in the absence of any specific provision therefor, the expulsion of a member could not be considered as forfeiting to the exchange his property rights in his seat, and that the proceeds of the bankrupt's membership, after paying any claims of the exchange or its members, were assets of their estates to which their trustee was entitled.

In Bankruptcy. On petition by trustee asking order directing the treasurer of the St. Louis Stock Exchange to deliver to him the net proceeds realized from sale of the seats of the bankrupts in the exchange.

George D. Reynolds, for trustee.

J. Clarence Taussig, for treasurer of stock exchange.

SHIRAS, District Judge. From the record and evidence submitted in this case, it appears that Samuel A. Gaylord and John H. Blessing, prior to March 20, 1901, were engaged in business as stock brokers in the city of St. Louis, under the partnership name of Gaylord, Blessing & Co., and in their individual names they held seats or memberships in the St. Louis Stock Exchange. It further appears that on a petition in bankruptcy duly filed against the firm the partnership and its members were duly adjudged bankrupts in this court on the 17th day of April, 1901, and Charles W. Holt-camp was named and appointed trustee of the estates of the bank-

rupts. It is further shown that, having become insolvent, Samuel A. Gaylord and John H. Blessing were, on or about March 11, 1901, suspended from their rights in the stock exchange, and, charges of fraud having been preferred against them, the same were investigated by the governing committee of the exchange, in accordance with rules of the association, and on the 9th day of October, 1901, the named parties were expelled from the exchange, and thereupon, on the 12th day of November, 1901, the committee on admissions sold the memberships or seats in the exchange held by the bankrupts for the net sum of $4,460, which amount is now held by Benjamin C. Jinkins, the treasurer of the stock exchange.

For the purpose of settling the question whether the trustee is entitled to the money thus realized from the sale of the memberships formerly belonging to the bankrupts, the trustee has filed a petition reciting the facts, and asking an order upon the treasurer of the stock exchange, directing him to pay the money in his hands to the trustee; and to this petition Benjamin C. Jinkins, as treasurer of the stock exchange, answers that the proceeds of the sales of the memberships belong to the stock exchange, and do not form a part of the assets of the bankrupt.

The St. Louis Stock Exchange is not a corporation, but is an association of individuals, having a constitution and by-laws for the government thereof; it being declared in article 11 of the constitution that "the purpose for which the exchange is formed is to establish and maintain a salesroom in which its members may meet and conduct the business of buying and selling bonds, stocks, and other securities, and lending money, and to establish and enforce rules and regulations governing the same, and to encourage among its members in their dealings with each other, and with the public, honorable and uniform business methods in the conduct of such business." It is further provided that the total membership shall be limited to 50 members; that the initiation fee shall be $100; that any member who fails to comply with his contracts or becomes insolvent shall immediately so inform the president, and shall be suspended until after having settled with his creditors, when he may be reinstated by the committee on admissions; that, if any suspended member fails to settle with his creditors and apply for reinstatement within one year from the time of his suspension, his membership shall be disposed of by the committee on admissions, and the proceeds thereof be paid pro rata to his creditors on the exchange, as allowed by the arbitration committee; that the governing committee, by a two-thirds vote, may extend the time for settlement and reinstatement of a suspended member; that a member shall have the right to transfer his membership under certain defined restrictions, including the payment of all debts and obligations due to other members of the exchange out of the proceeds realized from the sale of the memberships; that when a member dies, being in debt to the exchange or any member thereof, his membership may be disposed of by the committee on admissions, and after paying the claims of the exchange, and the members thereof, the balance left shall be paid to the legal representative of the deceased; and that

"should any member be guilty of fraud, of which the governing committee shall be the judge, he shall, upon conviction thereof by a vote of two-thirds of the members of said committee present, be declared by the president to be expelled, and his membership shall be disposed of by the committee on admissions."

Under these provisions of the constitution of the stock exchange, it is claimed by the trustee that the memberships held by the bankrupts formed part of the assets of their estates, and on behalf of the exchange it is claimed that, having been expelled, the bankrupts forfeited all claim to, or right in, the proceeds realized from the sale of the memberships.

In Hyde v. Woods, 94 U. S. 523, 24 L. Ed. 264, a case involving the sale of a membership in the San Francisco Stock and Exchange Board, it was held by the supreme court that:

"There can be no doubt that the incorporeal right which Fenn had to this seat when he became bankrupt was property, and the sum realized by the assignees from its sale proves that it was valuable property. Nor do we think there can be any reason to doubt that, if he had made no such assignment, it would have passed, subject to the rules of the stock board, to his assignee in bankruptcy, and that, if there had been left in the hands of the defendants any balance after paying the debts due to the members of the board, that balance might have been recovered by the assignee."

In Sparhawk v. Yerkes, 142 U. S. 1, 12 Sup. Ct. 104, 35 L. Ed. 915, it is said:

"In Hyde v. Woods, 94 U. S. 523, 24 L. Ed. 264, it was ruled that the ownership of a seat in a stock and exchange board is property, not absolute and unqualified, but limited and restricted by the rules of the association; that such rules, in imposing the condition upon the disposition of membership that the proceeds should be first applied to the benefit of creditor members, are not open to objection on the ground of public policy, or because in violation of the bankrupt act; and that, in the case of the bankruptcy of a member, his right to a seat would pass to his assignees, and the balance of the proceeds, upon sale, could be recovered for the benefit of the estate. While the property is peculiar, and in its nature a personal privilege, yet such value as it may possess, notwithstanding the restrictions to which it is subject, is susceptible of being realized by creditors."

Under these decisions, it must be held that the question whether the memberships held by the bankrupts in the St. Louis Exchange can, in any sense, be treated as assets of the estates represented by the trustee, is dependent upon the provisions of the constitution of the exchange. These memberships are property of such a nature that unless the bankrupts, by reason of their expulsion, had forfeited all right or interest therein, the trustee would become entitled to the net proceeds realized from the sale thereof, and therefore the question to be determined is whether the constitution of the exchange declares that, upon expulsion of a member, his interest in his membership is wholly forfeited to the exchange. In determining this question, it must be borne in mind that the membership represents at least two distinct rights; the one being the personal privilege of conducting business on the floor of the exchange, with the advantages thereto pertaining, and the other is the ownership of a right to the money value of the membership, and both of these rights are subject to the restrictions which are contained in the con-

stitution of the association. In cases of suspension, the right to transact business as a member of the exchange ceases, and, unless the member is reinstated, is wholly terminated. In case of the death of a member, this right to transact business of course ceases, and in cases of expulsion this right is at an end. In cases of suspension, if the party is not reinstated within one year, or such longer time as may be granted him by the governing committee, then his membership is to be disposed of by the committee on admissions, and the proceeds realized therefrom are to be paid pro rata to his creditors on the exchange. This is not a forfeiture of the membership to the exchange as a whole, but is a mode of securing the payment to such members of the exchange as are creditors of the delinquent member of the money realized from the sale of the debtor's property, to wit, his membership in the exchange. In case of the death of a member, the provision is that his membership may be disposed of by the committee on admissions, and, after satisfying the claims of the exchange and members thereof, the balance left is to be paid to the legal representatives of the deceased member. Clearly, therefore, in the cases of permanent suspension or of the death of a member, the property value or right in the membership is not forfeited to the exchange, but provision is made for applying the money realized from a sale thereof to the payment of the debts due the exchange, or any of the members thereof, from the former owner of the membership, and for the payment of any balance left to him or his representative; and these provisions demonstrate that, under the provisions of the constitution, the termination of the personal right to carry on business on the floor of the exchange does not, ipso facto, destroy the right or interest of the former member in the money value of his membership. To sustain the contention that the forfeiture of the personal right to the use of the exchange facilities also works a forfeiture of all claims to the money value of the membership, some express provision to that effect must be found in the constitution of the exchange; for a right to forfeitures of this character cannot be maintained upon mere inferences, or upon a strained construction of the language of the constitution of the association.

It was within the power of the association to make provision for the forfeiture of all rights based upon membership in cases of expulsion, but to secure the right to forfeit the money interest belonging to a member by reason of wrongdoing on his part, or, in other words, to inflict a punishment of this nature on him, the right so to do must be set forth in the constitution or by-laws of the association. So long as one continues a member of the association, his membership therein is a property right, and, to devest him thereof, it must appear that some action has been had which, under the provisions of the laws of the association or of the statutes of the state applicable thereto, has legally deprived him of his property right. Under the express provisions of the constitution of the exchange, suspension so long as it continues, and expulsion permanently, deprives a member of his right to carry on his business on the exchange, but there is no clause to be found therein to the

effect that either suspension or expulsion shall work a forfeiture of the money value of the membership to the exchange.

Counsel for the exchange places reliance upon the provisions of section 1 of article 14, which declares that any member convicted of fraud shall "be declared by the president to be expelled, and his membership shall be disposed of by the committee on admissions." But certainly this is not a declaration that the membership is forfeited to the exchange, or that the proceeds realized shall be disposed of by the committee as it deems best. In cases of suspension, the membership cannot be sold until after the expiration of a year from the date of suspension, this time being allowed to the member to apply for reinstatement; but, in cases of expulsion for fraud, no provision is made for a reinstatement, and by the last clause of section 1, art. 14, provision is made for the immediate sale of the membership by the proper committee. This section does not attempt to define what the disposition shall be of the proceeds realized from the sale, and certainly it does not declare that they shall be forfeited to the exchange. The section directs the committee to dispose of the membership, but is wholly silent touching the disposition of the proceeds of the sale, and therefore the disposition of the proceeds to be made by the committee must be sought for in the other sections of the articles. If the contention of counsel for the exchange be sustained, to wit, that in cases of expulsion the proceeds of the sale of the membership are forfeited to the exchange, then the result would be that in cases of suspensions the proceeds of a sale are to be applied to the payment of the debts due the exchange and any member thereof, but that in cases of expulsion for fraud the proceeds of the sale go to the exchange as a whole, and the creditors wronged by the fraudulent transactions of the expelled member must bear the loss caused thereby. To sustain such a contention, so unfair to the creditors of the expelled member, it must be made clear that the express provisions of the constitution so declare, but no such declaration is to be found in the section relied on. That section authorized the immediate sale of the membership, but is wholly silent as to the disposition to be made of the proceeds of the sale, and certainly the absence of all direction as to the disposition of the proceeds cannot be construed into a forfeiture of the rights, not only of the expelled member, but also of his creditors, to the money realized from the sale of the membership in which the expelled member had a property right. This section does not provide for a forfeiture of the money interest of the expelled member, and therefore we must look to the other provisions of the articles of the association for the rule to be followed in disposing of the proceeds arising from the sale of the membership, and as, in the case of a suspended member, no provision is made for the forfeiture of the proceeds of the sale to the exchange, it must be held that, in cases of suspended members and of expelled members, the constitution of the exchange recognizes the right of the member in the money value of the membership, and therefore after the payment of the debts, if any, due the exchange and to the members thereof,

111 F.—46

the balance left remains the property of the former member, and, although there is no express declaration that this balance shall be paid over to him or to his successors in interest, yet such is the necessary legal inference, if .it be true that he has not incurred a forfeiture of his right to the money value of the membership. Counsel for the exchange, in support of the claim of forfeiture, cite the case of Belton v. Hatch, 109 N. Y. 593, 17 N. E. 225, 4 Am. St. Rep. 495, wherein the court of appeals of New York, in construing a similar provision in the articles of the New York Stock Exchange, held that the right to dispose of a membership of an expelled member must be construed to mean that the expulsion worked a forfeiture of all the rights and interest of the former member. In the light of the rulings of the supreme court in Hyde v. Woods and Sparhawk v. Yerkes, supra, to the effect that the interest of a member of a stock exchange is property of such a nature that, after the payment of the claims due the exchange and the members thereof, the proceeds thereof will pass to his trustee in bankruptcy, it cannot be held that the termination of the right to remain a member of the exchange ipso facto causes a forfeiture to the exchange of the money value of the membership. It is said by the learned judge giving the opinion in Belton v. Hatch, supra, that "if a member becomes honestly insolvent, and fails to qualify under the rules for readmission, or if he dies after the claims of the association are discharged, the proceeds may be paid to him or his legal representatives, as the case may be. But in the case of a member who, by misconduct cognizable by the laws of the association, forfeits his rights to continue to remain a member, there is reserved by the constitution the right to dispose of his membership," and from this right of disposition the right of forfeiture is inferred. In the instances of a failure to qualify for readmission or of a death of a member, the right to dispose of the. membership is vested in the exchange, through the action of the proper committee, yet it is admitted by the court of appeals of New York that in these cases there is no forfeiture to the exchange, so that it does not follow that the right to dispose of the membership necessarily creates a right to forfeit the proceeds. If it be admitted that there is a property right in the membership,—and under the rulings in Hyde v. Wood and Sparhawk v. Yerkes, supra, that is not an open question in this court,—then certainly the owner of this property right cannot be deprived thereof, except through the operation of some rule or law binding upon him. It was open to the stock exchange to have made provision for the forfeiture of all rights in the association, in cases of fraudulent conduct on part of members of the exchange, but, to insure the right to inflict a punishment of this nature, proper provision must be made in the laws of the association. The right to expel a member guilty of fraudulent conduct is clearly provided for in the articles, but no express provision is made for a forfeiture of the money realized from a sale of the membership of an expelled member, and courts are not justified in assuming that the right of forfeiture exists, when no provision to that effect is found in the laws of the association. The

reason why such provisions are not found in the constitution of the exchange is probably due to the fact that the originators of the association realized that the creditors of the expelled member would be the actual sufferers from the adoption of such a provision, and hence it is not included in the constitution.

The conclusion reached is that the trustee in bankruptcy is entitled to the net amount realized from the sale of the memberships held by the bankrupts in the St. Louis Stock Exchange, after deduction made of any debts due the exchange or the members thereof, and is entitled to an order directing the treasurer of the exchange to pay this net amount to the trustee.