**In re Wayne HORNE, also known as W. Niles Horne, Debtor,**

**Floyd BABBITT, Trustee, Plaintiff-Appellee,**

v.

**DELLSHER INVESTMENT CO., INC., Defendant-Appellant.**

**No. 81 C 2616.**

United States District Court, N. D. Illinois, E. D.

Jan. 6, 1982.

Floyd Babbitt, Chatz, Berman, Maragos, Haber & Fagel, Chicago, Ill., for plaintiff-appellee.

Marcus, Rothbart & Esses, Chicago, Ill., for defendant-appellant.

## ORDER

ROSZKOWSKI, District Judge.

Before the court is an appeal taken from an order of the Bankruptcy Court.

Plaintiff-Appellee, the duly appointed and qualified Trustee for the estate of the debtor, Wayne Horne (hereinafter "Horne"), filed this action in Bankruptcy Court under Section 60(b) of the former Bankruptcy Act (11 U.S.C. § 96(b)) (repealed by the Bankruptcy Reform Act of 1978, effective October 1, 1979). Plaintiff seeks a determination and declaration that certain payments made to defendant-appellant Dellsher Investment Co., Inc. (hereinafter "Dellsher") by the debtor were preferential payments which can be avoided by the Trustee.

Dellsher's answer to the complaint sets forth two affirmative defenses, the second of which became the subject of a motion to strike and dismiss by the Trustee. The Trustee's motion was granted by the Bankruptcy Court and this appeal followed.

The facts are as follows. On July 20, 1978, Horne, the debtor, signed a promissory note wherein Horne promised to pay to the order of Dellsher the sum of $30,000.00 with interest at the rate of 9% per annum. Such note was due on July 20, 1979 and was secured by Horne's membership on the Chicago Mercantile Exchange (hereinafter the "Exchange") in accordance with Exchange rules. Horne's indebtedness to Dellsher, a clearing member of the Exchange, arose by reason of futures transactions Horne placed by and through Dellsher in its capacity as a clearing member of the Exchange.

Concurrent with executing the promissory note, Horne executed an Authorization to Transfer for Security Purposes, which irrevocably appointed Leo Melamed of Dellsher as Horne's agent to authorize the sale or transfer of the membership. Such authorization was filed with the president of the Exchange. Horne also executed an Irrevocable Power of Attorney, appointing Leo Melamed as his true and lawful attorney, in fact, to cause the sale of the membership and to cause the proceeds of such sale to be delivered to Melamed.

In July and September, 1979, Horne made payments to Dellsher totalling $31,000.00 in satisfaction of the promissory note. As a result thereof, Dellsher released its lien against the membership.

On September 24, 1979, Horne's involuntary petition in bankruptcy was filed. Because Dellsher received the aforementioned payments within the four-month period immediately preceding the filing of said petition, the Trustee filed a complaint in the Bankruptcy Court seeking a declaration that such payments were preferential. The Trustee asked for entry of judgment in its favor and against Dellsher for the total sum of all payments determined by the court to have been preferential.

Dellsher raised two affirmative defenses to the complaint, the second of which asserted that Dellsher was a secured creditor and, consequently, never received a preferential payment under Section 60(b) of the former Bankruptcy Act, 11 U.S.C. § 96(b). The Trustee filed a motion to strike and dismiss this second affirmative defense. In granting the Trustee's motion, the Bankruptcy Court stated as follows:

> Dellsher in order to claim a security interest against all creditors was required to follow the provisions of the Illinois Uniform Commercial Code—Secured Transactions. Dellsher has not alleged in this affirmative defense that it filed the financing statement necessary to perfect its claimed security interest. Dellsher cannot prevail against the trustee's claim on the ground that it has a secured transaction that this court should protect.

Memorandum and Order of Bankruptcy Court at p. 3.

The sole issue before this court is whether Dellsher may rely on Chicago Mercantile Exchange Rules to give itself secured party status under the former Bankruptcy Act.

Rule 110 of the Exchange, which governs the distribution of proceeds from the sale of an Exchange membership, provides, in pertinent part, as follows:

> The proceeds of the sale of a membership . . . shall be applied to the following purposes and in the following order of priority:
>
> \* \* \* \* \* \*
>
> B. Payment of any indebtedness to a clearing member who last qualified the selling member arising out of a pledge of such membership as collateral security on such indebtedness, or a deficit which the President shall determine arises directly out of futures transactions on the Exchange, if claims with respect thereto are filed within 20 days of posting of notice of sale;
>
> \* \* \* \* \* \*

The surplus, if any, shall be paid to the person whose membership was sold or his legal representative upon the execution of a satisfactory release.

It is well-settled that the various stock and commodity exchanges may impose valid and enforceable conditions on the sale of their memberships. *Hyde v. Woods*, 94 U.S. 523, 525, 24 L.Ed. 264 (1876); *Chicago Board of Trade v. Johnson*, 264 U.S. 1, 15, 44 S.Ct. 232, 235–236, 68 L.Ed. 533 (1924). In *White v. Board of Trade of City of Chicago*, 492 F.2d 871 (7th Cir. 1974), a case involving claims against the proceeds of the sale of a membership on the Chicago Board of Trade, the court, quoting *Johnson, supra*, stated:

> The Supreme Court held in *Johnson* that transactions on the exchange, at least, are liens "inherent in the property [seat on the exchange or the proceeds of its sale] in its creation" and "these must be satisfied before the trustee can realize anything on the transfer of the seat for the general estate." 264 U.S. at 15, 44 S.Ct. at 236. The *Johnson* case also establishes that the balance of the proceeds, after the payment of proper liens, is property of the bankrupt estate.

492 F.2d at 874.

Plaintiff argues that Exchange Rule 110 and the above-cited cases have no application to the case at bar which is concerned only with determining whether Horne's direct payments to Dellsher constitute a voidable preference. Plaintiff urges the importance of distinguishing between Dellsher's receipt of payment directly from Horne, on the one hand, and Dellsher's priority rights under Exchange Rule 110 to the proceeds from the sale of Horne's membership, were such a sale to occur. Plaintiff claims that because Dellsher failed to perfect its security interest as required by the Illinois Uniform Commercial Code, Dellsher may not assert secured party status as against the Trustee.

Defendant's position is that the above distinction is meaningless insofar as the Exchange rules relative to secured debts and membership liens are consistent with the notice provision of the bankruptcy laws. Defendant argues that the purpose of the

law of preferences is to insure equal treatment of all similarly situated creditors. All creditors who could be considered "similarly" situated to Dellsher are other members of the Exchange. Such members were put on notice of Dellsher's creditor status in July of 1978 when Dellsher filed the Authorization to Transfer for Security Purposes with the Exchange.

An amicus curiae brief was jointly filed as part of this action by the Exchange and by the Board of Trade of the City of Chicago (the "*amici*"). The *amici* argue, *inter alia*, that Horne's payments to Dellsher were not preferential because they did not diminish Horne's estate in any way. Horne's payments discharged a valid lien against Horne's Exchange membership, but the assets available to general creditors or other secured creditors were not diminished by the payments. Although Horne's cash assets were decreased by the amount of the payments, the discharge of Dellsher's lien against Horne's Exchange membership increased the value of that membership by a similar amount.

At a hearing held by the court on November 23, 1981, the parties had an opportunity to answer questions by the court and elaborate on their respective positions. After considering the briefs and the arguments of all concerned, it is the opinion of the court that Dellsher may not rely on Chicago Mercantile Exchange Rules to give itself secured party status under the former Bankruptcy Act. As argued most persuasively by the Trustee, the fact that Dellsher had a priority under Exchange Rule 110 to any proceeds that would result from a *sale* of Horne's Exchange membership is irrelevant to a determination of whether Dellsher had attained secured party status for purposes of the former Bankruptcy Act.

The facts indicate that Dellsher's security interest in the Exchange membership was an unperfected one. Not only did Dellsher fail to perfect his secured party status under Article Nine of the Uniform Commercial Code, but he similarly failed to follow the procedures of the Exchange, which require that claims against a membership be filed "within 20 days of posting of notice of sale." Nowhere in the case law relied upon by defendant and the amici is there a suggestion that a creditor/Exchange member is entitled to the status of a secured party under the Bankruptcy Act.

The amici's argument that the Bankruptcy Court's ruling will disrupt the functioning of the nation's commodity exchanges is unpersuasive. Those short-term creditor/Exchange members who find perfecting their security interests as required by the Uniform Commercial Code to be impractical can always rely on the procedure provided by Exchange Rule 110 to satisfy their liens in the event of bankruptcy.

Accordingly, it is ordered that the ruling of the Bankruptcy Court be and the same is hereby affirmed.