792 F.2d 1400
 15 Collier Bankr.Cas.2d 93, 14 Bankr.Ct.Dec. 1185,
Bankr. L. Rep. P 71,209
 In re FARMERS MARKETS, INC., et al., Debtors.
STATE OF CALIFORNIA, State Board of Equalization, and
Employment Development Department, Appellants,
v.
FARMERS MARKETS, INC., et al., Appellees.
In re Dick and Carleen BRINK, Debtors.
STATE OF CALIFORNIA, State Board of Equalization, and
Employment Development Department, Appellants,
v.
Sy V. BROWN, Appellee.
 Nos. 85-1921, 85-1922.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 13, 1986.
Decided June 26, 1986.
 
 Derry L. Knight, Deputy Atty. Gen., Sacramento, Cal., for appellants.
 Mary E. Olden, Cooper & Shaffer, Stephen A. Koonce, Russell, Jarvis, Eastabrook & Dashiell, Sacramento, Cal., for appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before GOODWIN, HUG and REINHARDT, Circuit Judges.
 GOODWIN, Circuit Judge.
 
 
 1
 The California State Board of Equalization ("the State") appeals the district court's affirmance of two bankruptcy court orders which barred the State from asserting California Business and Professions Code Sec. 24049 (Deering 1976) against several liquor license holders in bankruptcy.
 
 
 2
 Section 24049 disallows the transfer of a liquor license until the holder pays certain state taxes.[1] The licenses at issue have been sold. Part of the proceeds has been placed in escrow, and the remainder has been placed in trust with the debtors' attorney. The State and appellees Capitol City Farmers Markets, Inc. and Sy V. Brown, transferee of a license held by debtors Dick and Carleen Brink ("the debtors"), have stipulated that to the extent of the disputed amounts, the proceeds are to be paid to the prevailing party.
 
 
 3
 The bankruptcy court recognized that the Bankruptcy Act of 1898 ("the Act") did not preempt Sec. 24049, but held that under the 1978 Bankruptcy Code ("the Code") the debtors' estates take the licenses unhindered by Sec. 24049's transfer restriction.[2] In re Farmers Markets, Inc., 36 Bankr. 829, 831-32 (Bankr.E.D.Cal.1984). The principal issue on appeal is thus whether the enactment of the Bankruptcy Code changed the law with respect to the State's interest in the licenses. We hold that it did not, and reverse the district court's affirmance of the bankruptcy court's orders. We also hold that although the State's conduct in refusing to transfer the licenses violated the Code's automatic stay provision, 11 U.S.C. Sec. 362(a) (1982 & Supp. II 1984), the bankruptcy court correctly declined to impose sanctions, and the State's right to the amounts claimed under Sec. 24049 is unimpaired by the violation.
 
 
 4
 Whether Sec. 24049 is Valid in Bankruptcy Proceedings Under the Code
 
 
 5
 The bankruptcy court's decisions rested upon the misinterpretation of two subsections of 11 U.S.C. Sec. 541 (1982).
 
 
 6
 First, the court read Sec. 541(a)(1) to broaden the definition of the property of the debtor's estate. Regardless of Sec. 541(a)'s scope, reliance upon it is misplaced. That provision merely defines what interests of the debtor are transferred to the estate. It does not address the threshold questions of the existence and scope of the debtor's interest in a given asset. Under both the Act and the Code, we resolve these questions by reference to nonbankruptcy law. See Alfred M. Lewis, Inc. v. Holzman (In re Telemart Enterprises, Inc.), 524 F.2d 761, 765 (9th Cir.1975), cert. denied, 424 U.S. 969, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976); 4 Collier on Bankruptcy p 541.02, at 541-11 (15th ed. 1985) ("Neither the Code nor the Bankruptcy Act provides any rules for determining whether the debtor has an interest in property or whether he owes a debt."). Section 541(a)(1) was thus irrelevant to the inquiry.
 
 
 7
 Second, the court relied upon 11 U.S.C. Sec. 541(c)(1)(A) (Supp. II 1984) to distinguish the Act cases.[3] It read this provision to invalidate upon the commencement of bankruptcy proceedings all transfer restrictions on property in which the debtor holds an interest. Section 541(c)(1)(A), however, avoids only those restrictions which prevent transfer of the debtor's property to the estate. Senate Report 95-989 states that "[s]ubsection (c) [of section 541] invalidates restrictions on the transfer of property of the debtor, in order that all of the interests of the debtor in property will become the property of the estate." S.Rep. No. 95-989, 95th Cong., 2d Sess. 83, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5869. See also In re Polycorp Associates, Inc., 47 Bankr. 671, 672 (Bankr.N.D.Cal.1985) ("The plain meaning of [the legislative history] is that 541(c)(1)(A) is intended to eliminate barriers to the transfer of property to the estate, and nothing more."); 4 Collier on Bankruptcy p 541-22, at 541-100 to 541-101 (15th ed. 1985). Further, by its terms Sec. 541(c)(1)(A) applies only to "interest[s] of the debtor in property." The debtors' pre-bankruptcy interests were limited by Sec. 24049. Because Sec. 24049 placed no restrictions on the transfer of their entire interests to their respective estates, it does not conflict with Sec. 541(c)(1)(A).
 
 
 8
 We thus reject the bankruptcy court's grounds for distinguishing the Act case law. We turn to those cases to determine whether their underlying principles apply with equal force in cases arising under the Code. We find that they do.
 
 
 9
 This circuit has consistently held that the institution of federal bankruptcy proceedings against a holder of a California liquor license does not invalidate Sec. 24049's limitations. E.g., Sulmeyer v. California Department of Employment Development (In re Professional Bar Co.), 537 F.2d 339 (9th Cir.1976) (State claiming under Sec. 24049 takes before wage claimants); Meyer v. Bass, 281 F.2d 728 (9th Cir.1960) (same); United States v. California, 281 F.2d 726 (9th Cir.1960) (State claiming under Sec. 24049 takes before federal taxing authorities). We look not to the competing claims against the debtor, but to the nature of the debtor's property rights in the license. In In re Professional Bar, we stated:
 
 
 10
 The bankrupt estate, insofar as it includes liquor licenses, has only the limited value of the licenses encumbered as they may be by the terms of the statutes which create the licenses and provide the conditions of their transfer. It is to that limited value that any claims against the estate attach.
 
 
 11
 537 F.2d at 340.
 
 
 12
 See also Chicago Board of Trade v. Johnson, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924); Hyde v. Woods, 94 U.S. 523, 4 Otto 523, 24 L.Ed. 264 (1876) (both applying property rights analyses in finding that restrictions imposed by a debtor's transferor are valid in bankruptcy).
 
 
 13
 The State, as the debtors' transferor, had a number of severable rights in the licenses. See W.N. Hohfeld, Fundamental Legal Conceptions as Applied in Judicial Reasoning and Other Legal Essays 96-97 (1923) (property consists of "a complex aggregate of rights (or claims), privileges, powers, and immunities"). See also R. Nozick, Anarchy, State, and Utopia 281-82 (1974) ("Property rights are viewed as rights to determine which of a specified range of admissible options concerning something will be realized."). It was free to transfer less than the complete collection of rights to the debtors. Because the estate may take no greater interest than that held by the debtor, see 124 Cong.Rec. S17413 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini), the estate takes the license subject to the restrictions imposed on the debtor by its transferor.
 
 
 14
 To define the parties' proprietary interests does not end the inquiry. Property rights are not absolute. Congress may, within its constitutional limitations, abrogate state law entitlements in bankruptcy pursuant to its Bankruptcy Clause power, U.S. Const. art. I, Sec. 8, cl. 4. See G. Gilmore, Security Interests in Personal Property Sec. 45.2, at 1284 (1965). We must decide whether the Code's distributive scheme alters the State's pre-existing entitlement to compliance with Sec. 24049. If it does, Sec. 24049 must yield, regardless of the nature of the State's claim.
 
 
 15
 Section 24049 could arguably be cast as inconsistent with the bankruptcy process because parties claiming under it may fare better in bankruptcy than they would if there were no such statute. Yet this argument confuses the classification of an interest with the displacement of the Code's priority scheme. To classify what might otherwise be a lesser claim as a proprietary interest does not displace the priority provisions. It merely reclassifies an interest within that scheme. In Artus v. Alaska Department of Labor, Employment Security Division (In re Anchorage International Inn, Inc.), 718 F.2d 1446 (9th Cir.1983), we concluded that state law does not conflict with federal bankruptcy law merely because it favors one class of creditors over another. Id. at 1451. See also J.A. MacLachlan, Handbook of the Law of Bankruptcy 145 (1956) ("Priorities are to be distinguished from property rights."). The Code expressly recognizes such preferences in the form of perfected security interests and statutory liens. 11 U.S.C. Secs. 506(a), 545 (1982). Although it does preempt state law schemes to circumvent the bankruptcy laws by invalidating liens or priorities triggered by the bankruptcy or insolvency of the debtor, 11 U.S.C. Sec. 545 (1982), Sec. 24049 presents no such problem.
 
 
 16
 Whether the State's Conduct Violated the Automatic Stay
 
 
 17
 The bankruptcy court found in the Farmers Markets, Inc. proceedings that the State had violated the Code's automatic stay provision, 11 U.S.C. Sec. 362(a) (1982 & Supp. II 1984), by refusing to transfer the licenses after court approval of the sales. The court relied upon both Sec. 362(a)(1), which stays "a judicial, administrative, or other action or proceeding ... to recover a claim against the debtor," and Sec. 362(a)(6), which stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of [the bankruptcy proceedings]."
 
 
 18
 The court concluded that informal communications among State employees regarding the debtor's tax liability and the application of Sec. 24049 amounted to a "proceeding" under Sec. 362(a)(1). Although we recognize that proceedings violative of the stay need not be formal, see S.Rep. No. 95-989, 95th Cong., 2d Sess. 50, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5836, we nonetheless decline to treat mere internal communication as the commencement of proceedings against the debtor. The State therefore did not violate Sec. 362(a)(1).
 
 
 19
 We agree, however, that the State's refusal to transfer the licenses constituted an act to collect or recover a claim, and thus violated Sec. 362(a)(6). The State refused to transfer the licenses in an effort to obtain payment of its claims without first seeking relief from the automatic stay from the bankruptcy court. That the State was correct in claiming that it was entitled to assert Sec. 24049 despite the pendency of bankruptcy proceedings does not excuse it from complying with the Code's procedures. To allow entities with property rights in an asset of the estate to assert those rights outside of the collective bankruptcy proceeding would undermine the very purposes of the proceeding. The State could have sought relief under Sec. 362(d). Alternatively, as the holder of an interest in a property held by the estate, it could have sought adequate protection under 11 U.S.C. Sec. 363(e) (1982). We note, however, that the violation does not impair the State's right in these consolidated cases to compliance with Sec. 24049. Lastly, we agree with the bankruptcy court that sanctions under Sec. 362(h) against the State were not warranted.
 
 Conclusion
 
 20
 Because Sec. 24049 creates a property interest that conflicts with neither the Code's definition of the estate's property nor its distributive scheme, the debtors' estates took the liquor licenses subject to the State's right to payment under that statute. The State is therefore entitled to payment of the disputed amounts out of the proceeds of the licenses. Although the State's refusal to transfer the licenses constituted a violation of the automatic stay, the court properly declined to impose sanctions for the violation.
 
 
 21
 We remand for entry of the appropriate orders.
 
 
 22
 Reversed and remanded.
 
 
 
 [1]
 Section 24049 reads:
 The department may refuse to transfer any license when the applicant is delinquent in the payment of any taxes due under the Alcoholic Beverage Tax Law [Rev & Tax C Secs. 32001 et seq.], the Sales and Use Tax Law [Rev & Tax C Secs. 6001 et seq.], the Personal Income Tax Law [Rev & Tax C Secs. 17001 et seq.], or the Bank and Corporation Tax Law [Rev & Tax C Secs. 23001 et seq.], or on unsecured property as defined in Section 134 of the Revenue and Taxation Code, when such tax liability arises in full or in part out of the exercise of the privilege of an alcoholic beverage license, or any amount due under the Unemployment Insurance Code when such liability arises out of the conduct of a business licensed by the Department of Alcoholic Beverage Control.
 
 
 [2]
 The Act governs cases in which the bankruptcy petition was filed before October 1, 1979. The Code governs cases filed subsequently. Pub.L. No. 95-598, title IV, Sec. 402(a), 92 Stat. 2682 (1978)
 
 
 [3]
 Section 541(c)(1) reads, in part:
 Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable bankruptcy law--
 (A) that restricts or conditions transfer of such interest by the debtor;
 ....