# EDWIN S. ZELL *vs.* THE BALTIMORE STOCK EX-CHANGE ET AL.

*Regulations of Stock Exchange —Sale of Seat for Debts of Member.*

Under the Constitution and by-laws of the Baltimore Stock Exchange, a voluntary, unincorporated association, the seat of a member in the exchange may be sold by it, and the proceeds of the sale applied to the payment of his debts to other members of the exchange, to the exclusion of other creditors of such member. ˙A and B were partners in the stock brokerage business. B was elected a member of the Stock Exchange and A furnished the money for the purchase of a seat or membership, which was placed in B's name. As the result of his individual transactions, and not those of the firm, B became indebted to other members of the exchange, and a sale of his seat was threatened in order to liquidate this indebtedness. A then filed the bill in this case alleging that the seat was his property, by way of resulting trust, and had been put in the name of B merely for convenience and asked that the sale be restrained. *Held,* that the right to the seat in the exchange was subject to the provisions of the constitution of the exchange, and under these provisions the seat being in the name of B is liable primarily for his debts to other members of the exchange, and it makes no difference that these members knew that B's partner had bought the seat for him.

Appeal from the Circuit Court No. 2, of Baltimore City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Frank Gosnell* (with whom was *James W. McElroy* on the brief), for the appellant.

*W. Burns Trundle* (with whom was *Edwin T. Dickerson* on the brief), for the appellees.

JONES, J., delivered the opinion of the Court.

This case originated in a bill of complaint filed by the appellant here in Circuit Court No. 2, of Baltimore City, in which he alleged that on or about the first day of June, 1899,

he purchased from Owen Daly, one of the appellees here and one of the defendants below, a seat or membership, in the Baltimore Stock Exchange and paid therefor the sum of $4,250; that for the sake of convenience the said membership or seat was placed in the name of Frank J. Merceret with whom, about the time of said purchase, he had formed a partnership for the purpose of carrying on a general brokerage business in stocks and bonds—"it being understood and agreed that the said Frank J. Merceret should transact the business of the firm on the Baltimore Stock Exchange; that without the knowledge or consent of the appellant said Merceret speculated in stocks and bonds upon his own account with the other individuals who are named as appellees and in consequence became indebted to them in the sums specified in the bill; that in January, 1905, the said Merceret received from the said appellees notification by letter that they could no longer carry for him said indebtedness. Payment thereof was requested and proceedings threatened in case of his failure to make such payment; that at the time the debts mentioned were contracted by Merceret the said appellees and each of them knew that the transactions giving rise to them were had solely on the individual account of the said Merceret and without the knowledge or consent of the appellant; that the said appellees knew that the seat or membership in the said Stock Exchange was not the property of Merceret, though standing in his name, but was the property of the appellant and that any dealings that the said appellees or any of them had with Merceret were on his individual credit and the said debts were not contracted with reference to the said seat or membership; that the appellant had addressed to the said appellees a letter to that effect in which he referred to the letter of the said appellees to said Merceret and called their attention to his claim that though the seat in question was "colorably" in the name of Merceret it was the appellant's individual property—having been paid for by him; which he averred had all along been well known to each and all of the said appellees and informing them that he would claim and maintain his rights in the premises; that

according to the constitution and by-laws of the Baltimore Stock Exchange, which was made defendant below and is one of the appellees here, "a seat or membership owned,'belonging to, and the property of, a member thereof, may by sold by" it, "and the proceeds of said sale applied to the contracts, debts or obligations with or to other members of the exchange to the entire exclusion of the other creditors of such member;" and a copy of the said constitution and by-laws is filed as an exhibit with appellant's bill.

The bill then charges that it is the intention of the appellees, who are the creditors of Merceret, to apply to the Baltimore Stock Exchange, to make sale of the seat or membership of the same, belonging to the appellant, as he claims, but standing in the name of Merceret, and apply the proceeds thereof to the payment of the debts due to such creditors appellees unless they be restrained, &c. The bill then prays an injunction to so restrain them and the Stock Exchange from such action. A preliminary injunction was granted.

The appellees, except Merceret, promptly filed answers to the bill and moved for a dissolution of the injunction. The appellees who were creditors of Merceret, as well as the Baltimore Stock Exchange, each and all denied in their answers, that they had any personal knowledge of the partnership between the appellant and Merceret or the terms thereof; or that, at the time the debts, referred to in the bill of complaint were contracted they knew that they were so contracted by Merceret without the knowledge and consent of the appellant; and denied that the seat or membership of the said Stock Exchange referred to in the bill was not the property of Merceret. On the contrary they averred "that all the right, title and interest therein under the constitution and by-laws whereby membership was created, was and could only be in the said" Merceret. Testimony was taken upon the motion to dissolve the injunction and the testimony of each of the said appellees was practically to the same effect as their answers in respect to their said respective denials. Upon the hearing of the motion the preliminary injunction was dissolved. The appeal

is from the order dissolving the same.    Prior to the dissolu-
tion of the injunction the appellee Merceret had answered the
bill under leave of Court but it is not material to refer partic-
ularly to such answer.

The appellant himself testified as a witness as follows: "I
told Mr. Daly I was going to purchase a seat on the Balti-
more Stock Exchange, had he one for sale, I was so informed
by Merceret.    He said he had.    I asked the price; $4,250;
he said it would cost $50.00 to have the seat transferred.    I
wanted to pay for that seat then and there and he said he
could not accept the money until Merceret was elected a
member, that the seats were sold subject to admission" And
again he said in his testimony: "I told Mr. Daly I wanted the
seat to be known as my property, that I was buying it.    Mr.
Daly told me that it could not be arranged to be known as
my property, that they recognized the board member, the man
in whose name the seat was.    Mr. Badart was present when I
told Mr. Daly and Mr. Orrick was present."

It would seem to be obvious upon this state of allegation
and proof that the rights of the parties before the Court must
depend upon the effect to be given to the constitution, by-
laws, rules and regulations of the Stock Exchange adopted
for the government of its membership and defining and fixing
the rights, privileges and obligations attaching to membership
therein.    The Stock Exchange is a voluntary association
governed by such constitution, by-laws, rules and regulations
as it may choose to adopt; and which, so far as not contrary
to law or public policy, will secure to the members thereof ex-
clusive rights and privileges which the Courts have fully rec-
ognized.    The constitution and by-laws of the Baltimore
Stock Exchange are in evidence in this case.    The one hav-
ing more particular reference to the controversy here has been
substantially set out in the appellant's bill; and is the one
against the enforcement of which the injunction is here sought.
Only one other will be specially referred to which is as follows.
"Every member shall, on the day of his admission and notifi-
cation thereof by the secretary, sign the constitution of the

exchange, and thereby pledge himself to abide by the same, and sll subsequent amendments thereof under penalty of forfeiture of his seat.''

The conditions under which a seat or membership may be sold by the Stock Exchange in enforcement of the obligations of its members are provided for in its constitution; and there is no pretence here that the Stock Exchange is proceeding or intends to proceed in respect to enforcing the obligations incurred by Merceret except in accordance with the provisions of its constitution applicable to the case. . Now will the Court interfere?    A ease very analogous to the case at bar is that of *Thompson* v. *Adams*, 93 Pa. St. 55, in which it appeared that the plaintiff gave to Samuel A. Richards who was a partner with William E. Thompson in the business of stockbrokers the sum of $1,000 to purchase a seat in the board of brokers. The seat was purchased by Richards, and he continued to hold it by plaintiff's permission without knowledge on part of the board of any other ownership or title until his death, in May, 1876.    At that time he was indebted to various members of the board in the sum of $5,477.17.    Under section of the constitution of the board of brokers when a member died his seat might be sold by the secretary; and after satisfying the claims of the members of the board the balance should be paid to the legal representatives. The seat was sold. The question was whether the plaintiff was entitled to the proceeds or any part either in full or *pari passu* with the creditors of Richards.    The Court below denied the right of the plaintifi to, or to participate in, the proceeds of the sale.    On appeal the judgment below was affirmed, and the Court said: "The constitution and articles of a voluntary association, such as the Philadelphia Board of Brokers, are law, as to the members.    The plaintiff was not a member, but had furnished the money by which Richards obtained a seat.    His contention is that he was the equitable owner of the seat, and had title to that which was received for it, and that the defendant had no right to apply the proceeds to debts due by Richards to other members in pursuance of the terms of the constitu-

tion of the club.   But why not?   Richards was the member of the board, the legal owner of the seat, and the plaintiff, an entire stranger unknown to the association.   The members gave credit to each other in part, no doubt. upon the faith of the liability of a member's seat to them for his debts.   There is nothing unlawful or unreasonable in the regulation.   The seat is not property in the eye of the law, it could not be seized on execution for the debts of the members.   It is the mere creature of the board, and of course, was to be held and enjoyed with all the limitations and regulations which the constitution of the board put upon it."

It is sought to distinguish the case at bar from the one just referred to in that the plaintiff there was a stranger to the exchange, and not a partner with the member in whose name the seat stood.   It is not perceived how the circumstance of a partnership of a member of the exchange with another who is not a member can make any difference in principle as to his relations to the exchange.   Being a partner with an outside party is nothing more than having a contract with such party subsisting at the same time with his contract with the exchange.   He is under an obligation to observe his contracts and engagements with each party; and there can be no reason why his contract or obligations with the exchange and its members are to be subordinated to those he may have with others whether they pertain to a partnership or otherwise.   It would be impossible for a voluntary association to maintain its organization and enforce, on behalf of its members, rights pertaining to membership if this were to be so.

It is further argued that there was not, in the case cited, any evidence to show that the other members of the exchange had any knowledge of the plaintiff's equity.   It has already been seen what the state of the testimony here is as to the fact upon which the appellant rests his equity; but be that as it may it is the exchange—the whole body of the membership— that has control, and the right of enforcement, of its laws and rules in the interest of each and all of its members: and such organization would be shorn of its function if the exercise of

such right and control was to be affected by particular equities that might be made to appear in the relations of individual members, as individuals and not as members of the association, with outside parties.

There seems to be no want of harmony in the authorities as to the validity and contractual effect of the rules and regulations of a voluntary association of the character of the one here in question. In another case, very much in point, *Hyde* v. *Woods*, 94 U. S. 523, the Supreme Court of the United States had under consideration a rule of a Stock Exchange which read as follows: "In sales of seats for account of delinquent members, the proceeds shall be applied to the benefit of the members of the board exclusive of outside creditors, unless there shall be a balance after payment of the claims of members in full." And the Court in giving effect to such rule in the particular case said, speaking through MR. JUSTICE MILLER, "that rule entered into and became an incident of the property when it was created, and remains a part of it into whose hands soever it may come. As the creators of this right—this property—took nothing from any man's creditors when they created it, no wrong was done to any creditor by the imposition of this condition." The same Court in a later case, *Page* v. *Edmunds*, 187 U. S. 596, having before it more particularly the question of how far a seat in a brokers' exchange was to be treated as property, while holding in apparent disagreement with the *dictum* in the Pennsylvania case, to which it referred, that the seat was property, said undoubtedly it "was to be held and enjoyed with all the limitations and restrictions which the constitution of the board chooses to put upon it." In the recent case in this Court of *Baltimore City* v. *Johnson*, 96 Md. 737–744, a similar view was expressed of the tenure of a seat in a stock exchange, after a review of many authorities—reference being had there more particularly to the taxable quality of such seat—where this Court said, through JUDGE BOYD, "It is thus apparent that while a membership in the exchange is in a sense property, it is qualified and limited, and lacks one of the most valuable and usual characteristics of property—

the right of disposing of it as the owner deems proper, so long as he violates no law."

In view of the doctrine and principles thus enunciated and defining the nature of the holding of a seat in a stock exchange it cannot avail the appellant to say, nor for the Court to hold, in the circumstances of this case, that a resulting trust accrued to him, as he claims by the payment of the money which purchased the seat or membership here in question, for, giving him the benefit of the theory which he sets up, what was purchased was not a clear, unfettered title to the seat, but one burdened with the obligations that membership in the exchange put upon the member holding it and subject "to be held and enjoyed with all the limitations and restrictions which the constitution of the board chooses to put upon it." The bill in case does not allege nor does he attempt to show that he will not get this. As in no view can he get any more there was no error in refusing the relief asked and the order of the lower Court dissolving the injunction will be affirmed.

> *Order affirmed with costs to the appellees.*

(Decided January 10th, 1906.)