MARY A. KEYER *v.* MEMPHIS COTTON EXCHANGE *et al.*

(*Jackson.*   April Term, 1916.)

1. **EXCHANGES. Property in seat. Right to compel transfer.**

Where the charter of a cotton exchange expressly provided that its members were not stockholders, the rule that a purchaser 'of stock may compel, by a bill in equity, the transfer of the same on the books of the corporation, and that a corporation must issue a certificate of stock to one entitled to it, does not apply to the sale of a seat in the exchange.   (*Post, pp.* 421-424.)

Cases cited and approved:   State of Minn. v. McPhail, 124 Minn., 398; Hyde v. Woods, 94 U. S., 523; Sparhawk v. Yerkes, 142 U. S., 1; O'Dell v. Boyden, 150 Fed., 731; Zell v. Baltimore Stock Ex., 102 Md., 489.

Cases cited and distinguished: Vaughn v. Herndon, 91 Tenn., 65; ReGregory, 98 C. C. A., 383.

2. **EXCHANGES. Transfer of memberships.**

Where a provision of the constitution and by-laws of a cotton exchange was that "every member, upon admission, pledges himself to abide by the constitution and also by all the by-laws, rules, and regulations of 'the Exchange," a provision of the the constitution that no certificate of membership shall be transferred until the intention is posted for ten days and until all claims presented by other members within the ten days are settled was binding upon all members, and cannot be complained of by a third party.   (*Post, pp.* 424, 425.)

Case cited and approved:   Ryan v. Cudahy, 157 Ill., 108.

---

FROM SHELBY

---

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the

Court of Civil Appeals from the Supreme Court.—F. H. HEISKELL, Chancellor.

BOYD & BEJACH, for complainant.

J. W. CANADA and EVANS & McCADDAN, for defendant.

MR. GHOLSON, Special Judge, delivered the opinion of the Court.

The husband of complainant was a member of the Memphis Cotton Exchange and held a certificate of membership. This he bequeathed to complainant by will, and after his death she rented or leased the membership to several parties. In each instance the certificate was regularly indorsed, transferred on the books of the Exchange, and a new certificate issued to the lessee, enabling him to avail himself of all the rights and privileges of a member of said Exchange. On August 28, 1911, she leased it to Eugene H. Carter for one year, a certificate was duly issued to him, which he on the same day transferred on the back thereof to her, and she actually held it thereafter, although it stood, and still is, in Carter's name on the books of the Exchange. She renewed the lease to Carter for another year, without further assignment, transfer or other certificate, so that his right to use said membership, so far as she is concerned, expired August 28, 1913: The said certificate of membership issued to Carter, and his assignment thereof to complainant, are as follows:

"No. 605.

"Memphis Cotton Exchange Certificate of Member-
ship.

"This certifies that Eugene H. Carter is a member
of the Memphis Cotton Exchange, of Memphis, Tenn.,
in full and regular standing at the date hereof. This
membership is subject to annual dues and is trans-
ferable on the books of the Exchange as provided by
the constitution and by-laws.

"Witness the corporate seal and signatures of
the president and secretary at Memphis, Tenn., this
28th day of August A. D. 1911.

"John Sneed Williams, President.

"Henry Hotter, Secretary.

Indorsement:

"For value received, I hereby transfer the within-
named certificate of membership in the Memphis Cot-
ton Exchange of Memphis, Tennessee, to Mrs. Mary
A. Keyer, subject to the constitution and by-laws of
said Memphis Cotton Exchange. Eugene H. Carter.
"Dated August 28th, 1911.

"Witness: H. R. Boyd."

Carter was thereupon duly enrolled upon the books
of the Exchange as a member, and thereafter exer-
cised all the rights and privileges of a member and
transacted business on the floor of the Exchange with
other members in the regular way, in accordance with
the constitution, by-laws, rules and regulations of the
Exchange, until this controversy arose.

During the time said membership was rented said Carter gave complainant an indemnity bond guaranteeing her against loss resulting from the rights of other members against her certificate while it stood in his name.

Complainant applied for election as a member of said Exchange, and on November 26, 1913, was duly elected and since has paid all dues and assessments charged against such membership. It appears that while one might be elected a member before having a certificate, yet he could not transact business on the floor of the Exchange, nor was he entitled to all the privileges of membership, until a certificate of membership was issued to him. She requested said Exchange, through its proper officials, to issue her a certificate of membership. Upon this request the said Exchange gave notice, posted on its bulletin board, that Carter intended to transfer his certificate of membership in the Exchange.

Within the ten days as presented by said notice, Battle M. Brown & Co., members of said Exchange, gave due notice to its officers that said Carter was indebted to them in the sum of $3744.47, with interest, on account of a purchase and delivery of cotton from them in January, 1912, on which he paid one-half, gave his check on a Memphis bank for the other half, payment of which being declined it was protested and had never been paid.

Thereupon the Exchange declined to reissue the certificate standing in the name of Carter to the com-

plainant, until he paid to said Battle M. Brown & Co. the above indebtedness. This refusal was under a provision of the constitution of said Exchange, which is as follows: .

''Sec. 2. A certificate of membership may be transferred to a member or a member-elect, but to no other person, by a surrender thereof to the secretary of the Exchange, together with a duly executed assignment thereof, and a fee of $25 for transferring the certificate, whereupon the secretary shall issue a new certificate of membership to the member, a member-elect, mentioned in said assignment. But no certificate of membership shall be so transferred until a notice of the intention to make such transfer, subscribed by the member owning the certificate, shall be posted upon the bulletin of the Exchange for ten days, and until all claims against such member which may be presented within said ten days, by other members of the Exchange, shall be settled; or while any dues on such membership shall remain unpaid. The executors or administrators of the deceased member may transfer their decedent's certificate as herein provided.''

The complainant then filed her bill in this cause asking for a mandatory injunction to compel the said Exchange, through its proper officers, to issue her a certificate of membership in lieu of the one standing on its books in the name of said Carter.

The Memphis Cotton Exchange was organized in 1874, under charter granted by the chancery court. Thereafter, in 1889, it obtained a charter under the general incorporation laws of Tennessee, under which it has since done business. The purposes as stated in the charter are:

"To purchase or provide, regulate and maintain a suitable building, room or rooms, for a 'Cotton Exchange' in the city of Memphis; to adjust controversies between the members, and to appoint a board of arbitration to adjudicate upon such controversies; to establish just and equitable principles in the trade; to maintain uniformity in its rules, regulations and usages; to adopt standards of classification; to acquire, preserve and disseminate useful information connected with the cotton interests throughout all markets; to decrease the local risks attendant upon the business, and generally to promote the cotton trade of the city of Memphis, increase its amount and augment the facilities with which it may be conducted. . . .

"The general welfare of society, not individual profit, is the object for which this charter is granted, and hence the members are not stockholders in the legal sense of the term, and no dividends or profits shall be divided among the members."

The said Exchange has a constitution and by-laws for the transaction of business, providing for election of certain officers, admission of members, the number of which is limited to one hundred and seventy-five

initiation fees, transfer of certificates of membership, annual dues, certain committees, and prescribing their duties, etc., being such as are usual with produce exchanges. Among others is the one quoted above, and there is a further provision that:

"Every member, upon admission, pledges himself to abide by the constitution, and also by all by-laws, rules, and regulations of the Exchange."

The constitution also provides for the expulsion of a member for, among other things, fraudulent breach of contract, or of any proceeding inconsistent with just and equitable principles of trade, or of other misconduct.

It is shown to have been the uniform custom of the Exchange, acting under the rule quoted above, to post on its bulletin board for ten days a notice of the proposed transfer, and not to transfer a certificate of membership until the member, in whose name it stood on the books of the corporation, paid all claims and debts due from him to another member of the Exchange. This rule applied to all members. That in some instances it was personally known that memberships were leased or rented, yet the lessee or renter appeared on the books of the Exchange as a regular member, and to all intents and purposes was such as between him and the corporation.

The Exchange does an average annual business in spot cotton estimated at $33,000,000. The last sale of a membership was for the price of $2500.

The theory of the bill is that a membership in said Exchange is a share of stock and property, and not merely membership subject to forfeiture; that having been duly elected a member and tendered the certificate of membership transferred to her by Carter, together with the required transfer fee, a court of equity will order the proper officers of the Exchange to issue to her a certificate in her name in place of the one tendered by her standing in the name of Carter.

The Exchange relies upon the validity of the provision of its constitution quoted above and declines to issue a certificate of membership until Carter has paid his indebtedness to Battle M. Brown & Co. The validity of the provision of said constitution is not attacked by the bill, and it is not contended that it is unreasonable. It is insisted, however, by the complainant, that in refusing to make the transfer and issue a certificate of membership, the Exchange is attempting to enforce a lien on a membership in it in favor of another member. It is further insisted that even if the Exchange had a right to refuse to transfer to her the certificate of membership involved in this suit, it had waived that right and estopped itself to set up same.

The authorities cited by learned counsel for complainant supporting the position that a purchaser of stock may compel, by bill in equity, the transfer of same on the books of the corporation, and that a corporation must issue a certificate of stock to one entitled to it, do not apply here.

The complainant is confronted in the beginning with the proposition that, by its charter, "this is a corporation for general welfare and not for profit; that the members are not stockholders in the legal sense of the term, and no dividends or profits shall be divided among the members."

This court has held in the case of *Vaughn* v. *Herndon*, 91 Tenn., 65, 17 S. W., 793, where the Clarksville Tobacco Board of Trade was chartered under the same statute as the Memphis Cotton Exchange, that the provision of the charter and the by-laws thereunder are wise legislation, and will operate to prevent much needless and expensive litigation, as well as promote the welfare of commerce, if correctly enforced.

"A seat in an exchange, for some purposes and in some aspects, is regarded as property, while for other purposes it may be regarded otherwise. Although a seat in an exchange is something more than a mere personal license or privilege, it is not property in the concrete or in the broad sense of that term. It is, however, a thing of value, often of very considerable value, and consequently in this specific and peculiar sense it is regarded as property, and especially is this true since it is capable of being reduced to possession and transferred. It has been held that the contingency of the refusal of an exchange to approve of the transfer of a seat therein affects its value but not the property in such seat. Some courts without qualification have declared the seat to be property; and though its sale and transfer be clogged with

onerous conditions, and the property be of a narrow character, these conditions and characteristics, it has been held, go only to the reduction of the pecuniary market value, and do not deprive it of its character as property." 10 Ruling Case Law, 1206, and authorities cited.

A seat in an exchange has generally been held as an asset in bankruptcy, and may be disposed of by the member's trustee in bankruptcy; and in some jurisdictions it has been held subject to a judgment creditor in proper proceedings. 10 Ruling Case Law, pp. 1208 and 1209.

In Minnesota it has been held that a membership in a board of trade was property and might be taxed.

See the annotated case of *State of Minn.* v. *Mcphail,* 124 Minn., 398, 145 N. W., 108, 50 L. R. A. (N. S.), 255, Ann. Cas., 1915C, 538.

In Re Gregory it was held that funds arising from the closing out of the transactions upon its floor of a bankrupt member of a stock exchange pass into the hands of the bankruptcy trustee, subject to the rules of the exchange, which give it and its members priority over other creditors. See Annotated case *Re Gregory,* 98 C. C. A., 383, 174 Fed., 629, 27 L. R. A. (N. S.), 613, and authorities cited.

"The right of the member to transfer or assign his seat not being an absolute one, but incumbered or clogged by such conditions not contrary to law, as the the Exchange shall see fit to impose thereon, a rule of the Exchange which in effect gives other members of

the Exchange to whom a bankrupt member is indebted on account of transactions on the Exchange, a preference in the proceeds of the sale of the seat, is valid, and the trustee in bankruptcy necessarily takes subject thereto; nor is such preference an unlawful one, within the provisions of the bankruptcy act. *Hyde v. Woods,* 94 U. S., 523, 24 L. Ed., 264; *Sparhawk v. Yerkes,* 142 U. S., 1, 12 Sup. Ct., 104, 35 L. Ed., 915.'' Note on page 616 of 27 L. R. A. (N. S.).

Also see *O'Dell v. Boyden,* 150 Fed., 731, 80 C. C. A., 397, 10 Ann. Cas., 239—opinion by Judge Lurton.

The case of *Zell v. Baltimore Stock Ex.,* 102 Md., 489, 62 Atl., 808, 4 L. R. A. (N. S.), 435, was where it was held that one who furnished his partner the money to purchase a seat on the Baltimore Stock Exchange has no equity to prevent the enforcement of a rule of the Exchange that a seat may be sold for the debts of the member holding it, in favor of other members, notwithstanding knowledge on the part of officers of the Exchange of the facts.

The court in this case held that there was no want of harmony in the authorities as to the validity and contractual effect of the rules and regulations of a voluntary association, the one in question; i. e., the Baltimore Stock Exchange.

It will be seen from the foregoing authorities that full force and effect are given by courts to the constitution and by-laws of exchanges and boards of trade, where reasonable. It appears that one of the pro-

Keyer v. Memphis Cotton Exchange.

visions of the constitution and by-laws of the Memphis Cotton Exchange was that:

"Every member, upon admission, pledges himself to abide by the constitution, and also by all the by-laws, rules and regulations of the Exchange."

The provision relied upon as a defense in this case being in force, it was binding upon all its members, and outsiders had no right to complain of it. See annotated case of *Ryan* v. *Cudahy,* 157 Ill., 108, 41 N. E., 760, 49 L. R. A., 353, 48 Am. St. Rep. 305.

There is no estoppel here of the Exchange, or its officers, that can be invoked by complainant.

The decree of the court of civil appeals affirming the chancellor in dismissing the bill was correct, and the writ of *certiorari* is denied.