In re George Wilson ANDREWS, Bankrupt.

Sam J. McALLESTER, III, Trustee, Plaintiff,

v.

George Wilson ANDREWS and Obstetrical-Gynecological Associates, P. C., Defendants.

Bankruptcy No. 76–267.

United States Bankruptcy Court, M. D. Tennessee.

Sept. 4, 1981.

On Motion for Reconsideration, Rehearing or New Trial Sept. 28, 1981.

Sam J. McAllester, III, Nashville, Tenn., for plaintiff.

John E. Acuff, Cookeville, Tenn., for George Wilson Andrews.

Richard D. Bird, Nashville, Tenn., for Obstetrical-Gynecological Associates, P. C.

## MEMORANDUM

RUSSELL H. HIPPE, Jr., Bankruptcy Judge.

In this adversary proceeding the court must determine what interest a trustee has in a bankrupt physician's professional corporation. It appears to be a case of first impression under the Tennessee Professional Corporation Act which was enacted in 1970 and codified as §§ 48–2001 *et seq.*, of the Tennessee Code.

The pertinent facts are undisputed. In 1972 the bankrupt and another physician chartered Obstetrical-Gynecological Associates, P.C. (hereinafter "Ob-Gyn"), "to engage in all aspects of the general practice of medicine, surgery, medical research and particularly in the fields of obstetrics and gynecology." Both doctors entered into employment contracts with the corporation. Certificates of stock also were issued to both. The bankrupt initially received 100 shares. He subsequently acquired additional shares. When he filed his bankruptcy petition on February 13, 1976, he owned a total of 170 shares. He delivered the certificates evidencing his ownership of these shares to the trustee shortly after filing his petition. The bankrupt remained an employee of the corporation until he resigned effective July 31, 1978. Neither the bankrupt nor the trustee advised the corporation of the filing of the bankruptcy petition until the bankrupt tendered his resignation. At that time the corporation was notified that the trustee held the stock certificates and was requested to pay the trustee the redemption value payable to a shareholder-employee upon resignation as provided in the Ob-Gyn by-laws.

All parties are in agreement that the shares should be redeemed. The principal dispute is over the appropriate date to be utilized in determining their book value, the by-laws of Ob-Gyn providing for redemption at ninety percent of that value. Ob-Gyn insists that the date of the filing of the bankruptcy petition should govern. The parties have agreed that the book value as of that date is $147.33 per share. The trustee insists that the date of resignation is controlling. The agreed book value as of that date is $196.27 per share. The bankrupt supports the position of the trustee and asserts no right to any of the redemption proceeds.

Neither the Tennessee Professional Corporation Act nor the charter or by-laws of Ob-Gyn contain any express provisions as to the effect of the filing of a bankruptcy petition by a shareholder on his interest in such a corporation.

Section 48–2005(1) of the Tennessee Code provides that

[s]hares in a professional corporation may only be issued to, held by, or transferred to a person who is licensed to practice the profession for which the corporation is organized . . . .

The by-laws of Ob-Gyn provide that shares may be issued to and held by only "persons duly licensed to practice medicine and surgery under the laws of the State of Tennessee and employed by the corporation." In addition, the by-laws prohibit any such person from becoming a shareholder until approved by a two-thirds majority vote of outstanding shares.

There appear to be no Tennessee decisions addressing this issue. The Supreme Court of Florida, in construing that state's professional incorporation statute, which does not appear to differ materially from that of Tennessee, has concluded in effect that, although alienation of such shares may be restricted, they nevertheless are subject to execution by a judgment creditor even though the new owner may not be a qualified professional. That court indicated that the effect of such a levy should be the same as if a professional shareholder had become disqualified from practicing the profession. *Street v. Sugerman*, 202 So.2d 749 (Fla.1967).

■ The rationale of the Florida court opinion is persuasive and this court knows of no reason why Tennessee courts would not take the same position. The Tennessee General Assembly did not enact the Tennessee Professional Corporation Act with the intention of insulating the investment of professionals in such corporations from the claims of their creditors.

■ Thus, the court is of the opinion that the trustee—who, under § 70 of the Bankruptcy Act of 1898, acquired title to any property that was leviable under state law—was entitled to the redemption value of the bankrupt's shares as of the date of the filing of the bankruptcy petition since the by-laws of Ob-Gyn, as authorized by § 48–2005(3) of the Tennessee Code, also provide for redemption in the event of professional disqualification. This result is consistent with the one passing reference to bankruptcy in Ob-Gyn's by-laws. In paragraph 2 of Article 4, which is captioned "Cessation of Shareholder's Interest", appears the following:

A resigned, disqualified, retired or permanently disabled stockholder and the personal representative of a deceased stockholder or the *trustee of a bankrupt stockholder* shall not have any right, title or interest in the good will or any other property owned by the corporation except solely for the purpose of the amounts due for such stock interest as hereinafter provided in Article 10. (Emphasis supplied.)

Article 10 sets out the various redemption provisions, including provisions for redemption at ninety percent of book value upon resignation or disqualification of the professional.

This proceeding is complicated somewhat by the fact that the trustee failed to make a timely demand on Ob-Gyn for the redemption value of the bankrupt's shares and neither he nor the bankrupt advised the corporation of the filing of the petition until several years later. In the interim, the bankrupt continued in the employ of Ob-Gyn and the book value of the corporation's shares increased in value. Although at the conclusion of the hearing the court indicated its initial opinion that this increase in value should inure to the benefit of the trustee, the bankrupt having disavowed any interest in same, upon reflection the court cannot think of any sound reason for its doing so. Since the filing of his petition, the bankrupt has not asserted any interest in the shares nor in any sum that might be paid by the corporation in redeeming same. At the hearing his attorney reiterated the position of his client, indicating in effect that all of the bankrupt's interest in the shares had been transferred to the trustee with the delivery of the certificates. The bankrupt continued to work for the corporation, not by virtue of his ownership of any shares in same nor with any intention of enhancing their value but pursuant to the terms of the employment contract which he had entered into when the corporation was formed and which provided him with a share of corporate profits. There has been no showing of any prejudice to the bankrupt if the date of the filing of his bankruptcy petition is utilized in determining the book value of the shares for redemption purposes.

It is important as a general proposition that a trustee's rights be fixed as of the date of the filing of the bankruptcy petition and that they not be affected by anything which might transpire subsequent thereto. It is possible for the professionals in control of such a corporation to manage its affairs in such a way as to cause the book value of

the shares to decline in value. The trustee has not indicated to the court any prejudice to him in using the date of filing other than the lower redemption value which results in this instance. Obviously, if the book value of the shares had declined in value, the trustee would have insisted that the date of filing be controlling. In any event, the trustee should have notified Ob-Gyn promptly of his acquisition of the share certificates. The court cannot speculate as to what might have transpired had this occurred.

Thus, the court is of the final opinion, contrary to its announcement at the conclusion of the hearing, that the appropriate value to be utilized in determining the amount to be paid the trustee in redeeming the 170 shares of Ob-Gyn stock which he holds is the February 13, 1976, book value of $147.33 per share.

■ Ob-Gyn also contests the right of the trustee to receive interest on the redemption amount and invokes its right to pay that amount in monthly installments over a five-year period as provided in its by-laws in the event of redemption as a result of professional disqualification or resignation. The court is of the opinion that the installment payment option is available to Ob-Gyn, one purpose of such an option being to give a closely-held corporation, such as Ob-Gyn, time to generate the cash to make the required redemption payment. Since no demand was made on the corporation for the redemption of the shares until the bankrupt tendered his resignation, the payments could not have begun until 30 days after the effective date of resignation.

An appropriate order will be entered providing that Ob-Gyn shall forthwith pay to the trustee in a lump sum the total of all monthly installments which would have accrued since September 1, 1978, together with interest on each past-due installment at the legal rate, and shall pay to the trustee or his assigns the balance in consecutive monthly installments which shall be due and payable on the first of each month commencing October 1, 1981.

## ON MOTION FOR RECONSIDERATION, REHEARING OR NEW TRIAL

The plaintiff, Sam J. McAllester, III, Trustee, has filed a motion objecting to the memorandum and judgment entered by the court on September 4, 1981, and requesting that the court reconsider its decision or grant a rehearing or new trial.

As noted in the September 4th memorandum, the controlling issue in this adversary proceeding involves a determination of the extent to which the interest of a shareholder in a professional corporation is alienable or leviable under applicable state law. Pursuant to the Bankruptcy Act of 1898, as amended, the trustee is "vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act ... to property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him...." Former 11 U.S.C. § 110(a)(5) (1976). Both the Tennessee Professional Corporation Act, §§ 48–2001 *et seq.*, of the Tennessee Code, and the by-laws of the defendant professional corporation (hereinafter "Ob-Gyn") adopted pursuant thereto placed severe restrictions on the right of the bankrupt to alienate any of his interest as a shareholder of Ob-Gyn. In the case cited in the original memorandum the Florida Supreme Court held that although such shareholder interests might not be alienable, they were nevertheless subject to levy by a judgment creditor. That court reached that conclusion on the public policy ground that the Florida legislature did not intend to insulate a professional's investment in such a corporation from the claims of creditors. In applying the rationale of that opinion this court concluded that the trustee became vested with title to the bankrupt's entire shareholder interest in Ob-Gyn as of the date of the filing of the petition. Since the trustee was not qualified to practice the profession for which Ob-Gyn was organized, his acquisition of the bankrupt's shareholder interest triggered the redemption provi-

sion in the Ob-Gyn by-laws which is applicable in the event that a professional shareholder becomes disqualified. This by-law provision for redemption under such circumstances is mandated by § 48–2005(3) of the Tennessee Code. As noted in the original memorandum, this result is one which generally is desired by trustees since it insulates them from corporate action taken subsequent to filing which might diminish the redemption value of the shares. In this proceeding, however, the trustee desires to utilize a later redemption date since it would result in a larger sum being paid to redeem his shares. The trustee apparently would like to have the option of utilizing either date, depending upon which is more beneficial to the estate.

■ This position of the trustee—which would provide him with a continuing shareholder interest in Ob-Gyn—is untenable under the Tennessee Professional Corporation Act which prohibits anyone who is not licensed to practice the profession for which the corporation is organized having such a shareholder interest. Tenn.Code Ann. § 48–2005. The public policy implicit in this restriction on share ownership is the prohibition against fees for professional services being paid to persons who are not appropriately-qualified professionals. Although the trustee does not seek payment of any dividends, the increase in share value apparently resulted from fees retained by the corporation which otherwise would have been dividended to shareholders. The Tennessee statutes prohibit these fees being paid to the trustee in the form of dividends or in the form of increased redemption values.

In the original memorandum the court had considered the possibility that Ob-Gyn might be estopped from insisting upon the lower redemption value in light of the fact that the retained earnings may have been generated in part by the bankrupt. Assuming that estoppel would be applicable despite the public policy against anyone other than an appropriately-qualified professional receiving income from such a corporation, the court found no basis for estoppel in any event in light of the fact that neither the trustee nor the bankrupt advised Ob-Gyn of the filing of the bankruptcy petition and the transfer of share ownership to the trustee and in light of the fact that the bankrupt continued to work for Ob-Gyn pursuant to an employment contract and not as a shareholder.

Public policy considerations provide the trustee with the redemption right. Public policy considerations restrict the exercise of that right.

For the foregoing reasons, the court is of the opinion that the plaintiff's motion should be DENIED.

It is SO ORDERED.