**In re Richard R. SIX, Debtor.**

**Bankruptcy No. 93–04711–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 13, 1995.

Jay B. Verona, St. Petersburg, Florida, for Debtor.

L.C., Lee S. Damsker, Tampa, Florida, for OB/GYN Solutions.

Nancy G. Farage, Tampa, Florida, for Fort Brooke.

Roberta Colton, Tampa, Florida, for Sheer–Ahearn.

Gordon Kiester, Chapter 7 Trustee, Tampa, Florida.

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND DEBTOR'S MOTION TO DETERMINE VALUE OF COLLATERAL ALLEGEDLY SECURING CLAIMS OF OB/GYN SOLUTIONS, L.C., FT. BROOKE SAVINGS BANK, SUN BANK OF TAMPA BAY AND KIRBY BLANKENSHIP**

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case, originally commenced as a Chapter 11 case but due to the inability of Dr. Richard R. Six (Debtor) to obtain confirmation, it was converted to a Chapter 7 liquidation case. The matters under consideration are the following: (1) Debtor's Motion To Determine Value Of Collateral Allegedly Securing Claims Of OB/GYN Solutions, L.C., Ft. Brooke Savings Bank, Sun Bank Of Tampa Bay and Kirby Blankenship; (2) Debtor's Motion For Summary Judgment In Connection With Debtor's Motion To Determine Value Of Collateral; (3) Drs. Sheer, Ahearn & Associates, P.A. Motion For Partial Summary Judgement with valuation of the same collateral; and (4) Motion For Summary Judgment filed by OB/GYN Solutions, L.C. (OB/GYN). The motions just described have been filed during the pendency of the Chapter 11 case and when the case was converted on December 27, 1994, the Trustee filed a motion and sought leave to intervene in the contested matters in which the Motions for Summary Judgment have been filed. Although the Trustee was granted an opportunity to actively participate and submit briefs on behalf of the estate, the Trustee failed to do so but indicated that he is adopting the position taken by OB/GYN. The resolution of all these matters involve the threshold issue whether the Stock Restriction and Retirement Agreement (Agreement) (Debtor's Exh. B.), is binding and enforceable against the Trustee. The secondary issue is the value of the stock, an issue closely tied to the first one.

Before discussing the merits of the respective positions of the parties it should be helpful to briefly describe the somewhat awkward procedural posture of the matters under consideration. The matter was originally presented by the Debtor who, on June 10, 1994, filed a Motion To Determine The Value Of Collateral allegedly securing claims of OB/GYN Solutions L/C., Fort Brook Savings Bank, Sun Bank of Tampa Bay and Kirby Blankenship. In due course, the Debtor filed his Motion for Summary Judgment which, in turn, prompted Sheer–Ahearn to file its own Motion for Summary Judgment, also the same Motion by OB/GYN. All Movants contend that there are no genuine issues of material facts and they are entitled to a judgment as a matter of law in their respective favor. Motions for Summary Judgment sought only a determination of the binding effect of the Agreement and particularly whether or not the P.A. is entitled to exercise

its right of first refusal to buy the stock in question.

The Debtor's Motion is accompanied only by a copy of the stock certificate in dispute and filed no affidavit in support of the Motion. The Motion filed by Sheer–Ahearn is accompanied by an affidavit of Michael Flynn M.D.; The Motion of OB/GYN a copy of a document entitled Stock Restriction and Retirement Agreement (Exh. A) and a document fixing the value of each share at $2,437.7559 as of March 25, 1992 (Exhibit B); and a document entitled Second Amendment to Stock Restriction and Retirement Agreement (Exh. C).

On or about June 9, 1977, all of the shareholders of Sheer–Ahearn entered into the Agreement under consideration. Article I, of the Agreement provides that "no stockholder shall at any time directly or indirectly sell, assign, transfer, mortgage, encumber, pledge, or otherwise deal with or dispose of all or any part of the shares of the stock without first complying with this agreement". Article I also provides that if the written consent of the other shareholders is not obtained, the stock can only be disposed of in accordance with Article II. Article II provides that a stockholder may not sell his stock without serving notice, known as an "Offer to Sell," to the other shareholders first. Sheer–Ahearn has the first right to purchase all or any of the stock offered for sale. If Sheer–Ahearn does not exercises its right to purchase, then each of the other shareholders has a right to purchase a proportionate share of the stock offered for sale. The price of any stock offer to sell under Article II is to be set in accordance with Article V. Article V was amended by Schedule A on March 25, 1992, and the fair market value per share of any stock offered for sale in accordance with the Agreement is $2,437.7559 per share. Debtor owns 30.755+ shares of the issued and outstanding shares of stock and claims the Valuation to be $75,000.00 ($2,437.7559 × 30.766). The facts relevant to the resolution of the first issue as they appear in the record are as follows.

On June 12, 1992, OB/GYN, an assignee of a judgment obtained against the Debtor by Fort Brook Bank, obtained a writ of execution and, pursuant to an instruction to levy, the Sheriff of Hillsborough County levied on the shares of the Debtor and actually seized the stock certificates of the Debtor although the shares were released by the Sheriff and turned over to the Trustee.

Debtor filed his Voluntary Petition for Relief under Chapter 11 on April 28, 1993. At that time Debtor owned stock in Drs. Sheer, Ahearn & Associates, Professional Association (Sheer–Ahearn). Sheer–Ahearn is a medical professional association engaged in the practice of radiology. The Debtor became a shareholder in Sheer–Ahearn on or about June 24, 1980, through an Amendment to the Stock Restriction and Retirement Agreement of Sheer–Ahearn.

It is the contention of Sheer–Ahearn that it has a contractual right to redeem the stocks levied upon by payment of $75,000 fixed by the Agreement as the value of the stocks seized. In opposition OB/GYN contends that the Agreement's restriction on the sale, pledge, or encumbrance is applicable only to voluntary sales and not to judicial sales, therefore, the stock in question is not subject to these restrictions and the stock could be sold at the judicial sale for any amount. It is the Debtor's position that the terms and conditions of the Agreement are valid and also binding on third parties and even on an involuntary transfer, such as a judicial sale, triggers the right of the P.A. and the other shareholders to purchase the stock for the amount fixed by the agreement the sum of $75,000.00. In the alternative the Debtor contends that even if the agreement is not applicable to involuntary transfers such as a judicial sale, the provisions of the Agreement which limits ownership of stock in the P.A. to the employees of the P.A. must be recognized in determining the ultimate value of the stock.

There is no serious dispute that the facts relevant to the issues as outlined are without dispute and all agree that the issues could be resolved in their respective favor as a matter of law. Equally all Movants agree that the restriction on the transfer of stock in a professional association is valid and enforceable inter se the stockholders. The parties also

agree now that the stock of the debtor is not immune from levy. However this is where the agreement ends.

## THE BINDING EFFECT AND ENFORCEABILITY OF THE AGREEMENT AGAINST INVOLUNTARY TRANSFERS

The validity and enforcement of such agreements just like any other contracts are governed by the applicable State law. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The restriction on transfer of shares is specifically dealt with in this State by Fla.Stat. 607.0627 and in Subclause (2) provides that a restriction on the transfer or registration on transfer of shares is valid and enforceable. Shareholders agreement also dealt with by Fla.Stat. 607.0732 which provides in Subclause (1)

> An agreement among the shareholders of a corporation with 100 or fewer shareholders at the time of the agreement, that compiles with this section, is effective among the shareholders and the corporation . . .

It is evident from the foregoing that such agreements are binding between the parties and enforceable. The question remains, however, whether or not such agreements are binding and enforceable against third parties who are not party to the original agreement and most importantly third parties who seek to acquire the stocks through an involuntary proceeding such as judicial sales which is precisely what is contemplated in the present instance. Fla.Stat. 607.0622(2) provides that:

> Any person becoming an assignee or transferee of shares, or of a subscription for shares, in good faith and without knowledge or notice that the full consideration therefor has not been paid shall not be personally liable to the corporation or its creditors for any unpaid portion of such consideration to the corporation or its creditors for any unpaid portion of such consideration, but the assignor or transferor shall continue to be liable therefor.

At first blush it appears the provisions in this subclause deals only with voluntary transfers, however, now all parties agree that the levy made by the Sheriff in this instance was valid and the shares were not immune from execution and levy and ultimately a sale by the Sheriff. This, however, leads to the next question, which would be whether the high bidder at the Sheriff's sale would have been bound by the Agreement if the Sheriff did conduct the sale. In light of the fact that the Sheriff, by agreement, released the shares to the trustee, the question also applies to any proposed sale by the trustee. That is, would the sale conducted by the trustee be governed by the Agreement? Thus the remaining members of the P.A. would be entitled to purchase the shares at the trustee's sale for $75,000.00, the value of the stock fixed by the Agreement and would such sale also be controlled by the remaining restrictions fixed by the Agreement.

It cannot be seriously argued and disputed that as a general proposition with some exception, not relevant here, the trustee of the estate succeeds to the rights of a Debtor and his rights are not greater nor less than what were the rights of a Debtor prior to the commencement of a case. Thus, unless the special voiding powers of the trustee, § 544(a), (b), § 547, § 548 and § 549 come into play, the trustee takes the property subject to all valid liens and encumbrances and the interest of the estate is junior to such interest. It is equally true that the if the right to transfer of the property in question is restricted, such restrictions are recognized and enforced in bankruptcy unless the property in question is not property of the estate by virtue of § 541(c)(1)(A), which exception is clearly inapplicable to the stocks under consideration. For instance, no one can contend in good faith that a trustee in a Chapter 7 case may not sell various licenses issued by regulatory agencies such as those issued by the Civil Aviation Board (CAB), the Federal Communication Commission (FCC), regulating television and broadcasting licensees, state agencies issuing racing permits, and the like. Of course the transferee must be approved by the regulatory agency with jurisdiction over the license transferred.

The Ninth Circuit in the case of *In re Farmer's Markets, Inc.,* 792 F.2d 1400 (9th Cir.1986) held that a State Statute which

placed limitation on the transfer of a liquor license, ¶ 24049, was binding on a trustee in Bankruptcy citing *Sulmeyer v. California Department of Employment Development (In re Professional Bar Co.,* 537 F.2d 339 (9th Cir.1976); *Meyer v. Bass,* 281 F.2d 728 (9th Cir.1960); *United States v. California,* 281 F.2d 726 (9th Cir.1960).

■ The recognition of these restrictions are not limited to those which are imposed by Statute but also recognized if imposed by contract. For example, it is clear that an automobile dealership cannot be transferred freely without the approval of the grantor of the dealership who has a right to veto any prospective purchase's right to be an automobile dealer under the original dealership agreement. A seat in the stock exchange, while transferrable, cannot be transferred without the approval of the Board of Exchange. *Chicago Board of Trade v. Johnson,* 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924); *Hyde v. Woods,* 94 U.S. 523, 4 Otto 623, 24 L.Ed. 264 (1876).

The closest case on point is *In re Alan E. Baquet,* 61 B.R. 495 (Bkrtcy.D.Mont.1986). The case involved a closely held family corporation which contained a restriction on transfer of the shares which agreement also included, just like the one under consideration, the right of the shareholders in the corporation to repurchase the stock at the predetermined fixed price of $7.00 per share. In this case the Bankruptcy Court concluded that the nature and extent of a trustee's rights in a Debtor's property rise no higher than those of the Debtor unless the restriction under consideration is inconsistent with any provisions of the bankruptcy Code.

For instance, it is interesting to note that in the case of *In re Andrews,* 14 B.R. 356 (Bkrtcy.M.D.Tenn.1981) the Bankruptcy Court considered the identical issue involving an OB/GYN and also the interplay of the Professional Corporation Act of the State of Florida, because Tennessee Professional Corporation Act was similar to the Florida Statute and the Court found no Tennessee authorities to interpret the same. The Bankruptcy Court in Tennessee construed the Florida Statute and concluded that the alienation of shares in the professional corporation is subject to levy but is also subject to contractual restrictions and the trustee in bankruptcy is only entitled to receive the payment of the redemption proceeds provided for by the restriction.

The restriction of a transfer of a stock in question is also dealt with by Fla.Stat. 621 which specifically regulates professional service corporations, thus, § 621.06 requires that only duly licenses or otherwise legally authorized persons may render professional services. Section 621.09 and 621.11 provide that the capital stock of a professional service corporation may be issued only to individuals who are legally authorized or duly licensed to render the same specific services as those for which the corporation was incorporated and the sale or transfer of shares is prohibited. *See Street v. Sugerman,* 202 So.2d 749 (Fla. 1967).

This Court is not unaware that there is authority to support the proposition urged by OB/GYN and the Trustee that restrictions on the transfer of stock does not apply to involuntary transfers. In the case of *In the Matter of Trilling and Montague,* 140 F.Supp. 260 (E.D.Pa.1956) the District Court affirmed the decision of the referee in bankruptcy, who held that a restriction on the transfer of shares applies to voluntary transfers only and does not apply to involuntary transfers, such as a judicial sale. The continuing vitality of *Trilling* is in serious doubt. The Ninth Circuit in *Groves v. Prickett,* 420 F.2d 1119 (1970), held that under California law corporation by-laws reserving the right of first refusal in other shareholders does not unreasonably restrict right of alienation of stock or deprive shareholder of a substantial right and such restriction is valid, indirectly rejecting the holding of *Trilling.* The Court relied on a long line of California case all of which recognized the validity of restrictions on sale of corporate stock which gave to the corporation or the shareholders the right of first refusal.

OB/GYN also relies on the Florida Supreme Court's decision in *K.B. Weissman v. Lincoln Corporation,* 76 So.2d 478 (Fla.1954). In this case the Court stated that a provision that no stock can be sold until it is first offered to the corporation applied only to

voluntary sales of the stock by stockholders. The Court noted that the corporation can protect itself at the judicial sale by attending the sale and preventing the acquisition of the stock by strangers or by any adverse interest by being the high bidder at the judicial sale. OB/GYN's reliance on *Weissman* is misplaced. First, because the statement relied on by OB/GYN was only dicta and not the holding of the case; second, most importantly, *Weissman* did not involve a professional association.

It should be evident from the foregoing first, that the stock in question was subject to a levy and this is not disputed; second, that the stock restriction agreement is not only binding between the members but also applies to involuntary sales and is binding on the buyer of the stock at a trustee's sale. Thus, any bidder at the trustee sale must concede the right of first refusal of the members who are entitled to repurchase the stock at the stated value of $75,000.00. If neither the P.A. nor the members are willing to purchase the shares in question then the trustee possibly could sell it to the highest bidder. However, hence comes the rub. It is clear from the Statute cited earlier, Fla. Stat. 621.09 and 621.11, that no corporation organized as a professional service corporation may issue stock to anyone other than to a professional who is duly licensed or legally authorized to render the same specific professional service as those for which the corporation was incorporated. Thus, it is quite evident that even if the P.A. or the members of the P.A. do not desire to purchase the shares of the debtor, the trustee can only sell it to a radiologist. That brings us to the other question whether or not the person who acquired the shares at the trustee's sale must be an employee of the P.A. This question was answered in the negative by the District Court of Appeals in the Third District in the case of *Corlett, Killian, Hardeman, McIntosh and Levi, P.A. v. Merritt,* 478 So.2d 828, by holding that while shares of stock in a professional corporation can be transferred only to a duly licensed member of the profession, see Fla.Stat. 621.09, they are otherwise freely transferrable. According to *Corlett, supra,* there is no statutory requirement that the P.A. or its remaining

members must redeem the stock offered and there is no statutory requirement either that the shareholder be an employee of a professional service corporation. In sum, based on the foregoing, the ultimate question, the value of the stock of the debtor, must be determined by taking into account that whoever will purchase the stock other than the P.A. or its shareholders are taking the stock with notice of the restrictions and inasmuch as it is without dispute that in this case the restriction of the transfer appears on the face of the stock certificates, any person who will become a transferee of these shares will take the stock subject to the restrictions on the transfer and the conditions imposed by the Agreement.

In light of the fact that there is nothing in this record which would assist this Court to determine the estate's interest, if any, in the stock this Court defers ruling on the value until the trustee determines whether or not it will intend to liquidate this asset subject to the terms and conditions outlined or abandon the property as burdensome pursuant to § 554 of the Bankruptcy Code.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by OB/GYN Solutions be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Partial Summary Judgment of Sheer–Ahearn & Associates and the Partial Motion for Summary Judgment of the Debtor are granted and the Debtor's stock which is now property of the estate is subject to the terms and conditions imposed by the Stock Restriction and Retirement Agreement. It is further

ORDERED, ADJUDGED AND DECREED the Court shall defer ruling on the value of the stock pending a resolution of the issue whether or not the trustee will proceed and intend to liquidate the stocks in question.

DONE AND ORDERED.