# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No. 99-6035EM

———

In re:                                        *
                                              *
Popkin & Stern,                               *
                                              *
        Debtor.                               *
                                              *
Robert J. Blackwell, Liquidating Trustee      *

Ronald Lurie appeals from the April 19, 1999, order of the bankruptcy court[1] granting Robert Blackwell's second application to sell his judgment interest in certain stock to intervenors Daniel L. Dierdorf and James W. Hart pursuant to shareholder agreements of Dierdorf & Hart's of St. Louis Union Station, Inc. and Seventeen Seventy-Two, Inc.

While Lurie requests oral argument, after due consideration we see nothing to be added thereby. For the reasons set forth below, we affirm.

BACKGROUND

This appeal has a lengthy and complex history. On March 26, 1992, this case was commenced by an involuntary petition under Chapter 7 filed against the law firm of Popkin & Stern. Subsequently the case was converted to a case under Chapter 11. On May 4, 1992, the bankruptcy court issued an order for the appointment of a Chapter 11 trustee and the United States Trustee appointed Blackwell. On July 30, 1993, Popkin & Stern proposed a plan under which a liquidating trust would be created for the orderly collection and distribution of Popkin & Stern's assets and its bankruptcy estate assets. The plan provided that Blackwell would be the liquidating trustee. On August 27, 1993, that plan was confirmed.

On September 10, 1993, a liquidating trust agreement was executed between Blackwell and Popkin & Stern pursuant to the terms of the bankruptcy court's confirmation order. The agreement provided Blackwell with certain powers and duties, including the power to prosecute and defend all actions affecting the liquidating trust, and to compromise or settle any suits, claims, demands, and to waive or release any rights relating to the liquidating trust or its assets.

Ronald Lurie was a general and managing partner of Popkin & Stern. On October 24, 1994, judgment was entered in favor of Blackwell and against Lurie in the amount of $1,121,743 plus interest from the date of entry of judgment. Lurie appealed the judgment but failed to file a brief. The appeal was dismissed by the district court and accordingly the

---

[1]The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

judgment is final.  Lurie executed a settlement note pursuant to a settlement agreement with Blackwell.  However, Lurie failed to perform pursuant to the terms of the settlement and accordingly continues to be liable on the judgment.

On October 21, 1997, the bankruptcy court revived the judgment.  Lurie appealed the revival and we, as well as the Court of Appeals, affirmed the judgment of the bankruptcy court.  See Blackwell v. Lurie (In re Popkin & Stern), No. 97-6091EM, slip op. (8th Cir. BAP Mar. 5, 1998) (unpublished), aff'd, Blackwell v. Lurie (In re Popkin & Stern), 168 F.3d 494, 1998 WL 953993 (8th Cir. 1998) (unpublished).

On April 15, 1998, Blackwell obtained a judgment against Nancy Lurie setting aside and vacating Ronald Lurie's purported transfer to Nancy Lurie of stock in Seventeen Seventy-Two, Inc. and Dierdorf & Hart's of St. Louis Union Station, Inc.  On October 15, 1998, the United States District Court for the Eastern District of Missouri affirmed the judgment.  An appeal to the Eighth Circuit is pending.  There is no stay pending appeal.

On May 5, 1998, Blackwell filed a notice of execution, writ of execution, certificate of service, and summons and interrogatories to garnishees, Seventeen Seventy-Two, Inc. and Dierdorf & Hart's of St. Louis Union Station, Inc.  The garnishees answered and admitted possession of stock share certificates representing Ronald Lurie's ownership of 1,715 shares of common stock of Seventeen Seventy-Two, Inc. and 228 shares of common stock of Dierdorf & Hart's of St. Louis Union Station, Inc.

On August 6, 1998, Daniel L. Dierdorf and James W. Hart, shareholders in Seventeen Seventy-Two and Dierdorf & Hart's, filed a motion to intervene on the basis that the shareholders' agreements provided the corporations a right of first refusal, and the remaining shareholders a right of second refusal, to buy the shares at a price determined according to the terms of the shareholders' agreement.  Nancy Lurie also filed a motion to intervene.  On September 3, 1998, the bankruptcy court granted the motion of Daniel Dierdorf and James Hart and denied the motion of Nancy Lurie.  The order granting the motion provided that Daniel Dierdorf and James Hart were entitled, upon a court approved application by Blackwell for disposition of the stock, to acquire Lurie's shares of common stock in

accordance with the purchase price formula set forth in the Seventeen Seventy-Two and Dierdorf & Hart's shareholders' agreements.

Thereafter on September 3, 1998, Blackwell filed an application to sell his judgement creditor's interest in Lurie's stock to intervenors Daniel Dierdorf and James Hart in accordance with the Seventeen Seventy-Two and Dierdorf & Hart's shareholders' agreements. On September 10, 1998, Lurie filed an objection to Blackwell's application and filed a notice of appeal of the bankruptcy court's September 3rd orders granting and denying the motions to intervene.

On November 20, 1998, we dismissed the appeal for lack of jurisdiction because the orders appealed from were not final. We stated that Lurie would have the opportunity before the bankruptcy court to argue his position against Blackwell's application. On February 2, 1999, Blackwell filed a second application to sell his judgment creditor's interest in Lurie's stock to intervenors Daniel Dierdorf and James Hart in accordance with the Seventeen Seventy-Two and Dierdorf & Hart's shareholders' agreements.

Included in the application were notices from the Seventeen Seventy-Two and Dierdorf & Hart's corporations, and a notice from shareholder Lou Chiodini individually, declining to purchase Lurie's shares pursuant to the shareholders' agreements' right of first refusal provisions. Lurie did not file an objection to Blackwell's second application. The hearing on the second application was set for March 9, 1999. Notice of the hearing, including the application and the date and time of the hearing, was mailed to all parties, including Lurie, on February 1, 1999. Nancy Lurie requested and was granted a continuance and the court continued the matter to March 29, 1999. The order continuing the hearing was mailed by the court to all parties, including Lurie, on February 22, 1999.

The hearing was held on March 29, 1999. Lurie did not appear in person or by an attorney, and did not offer any objections, in writing or otherwise, to Blackwell's second application. On April 19, 1999, the bankruptcy court granted Blackwell's second application to sell the stock to the intervenors, overruled Lurie's objection to the (first) application, ruled that the shareholders' agreements of Seventeen Seventy-Two and Dierdorf & Hart's applied to the execution sale, ruled that the purchase price of $51,323 was in accordance with the

shareholders' agreements, and ruled that the execution sale was in accordance with the shareholders' agreements.

Nancy Lurie filed a motion for rehearing or, in the alternative, a motion for a stay of execution of judgment, on April 27, 1999. The bankruptcy court denied her motion on April 29, 1999. Lurie filed this appeal on April 29, 1999. On May 11, 1999, he filed a motion asking for a stay of execution of judgment. Nancy Lurie also filed a motion, on May 7, 1999, to stay execution of judgment, and a motion to intervene in this appeal. We denied both Lurie's and Nancy Lurie's motions.

## DISCUSSION

The shareholders' agreements provide:

2. <u>No Transfer of Shares</u>. None of the Shares of the Shareholders shall be subject to a voluntary or involuntary transfer, including (but not limited to) encumbrance, sale, assignment, gift, pledge, disposal, hypothecation, bankruptcy, legal process, assignment for the benefit of creditors or any other transfer, in any manner whatsoever to any person, trustee, receiver, corporation, partnership, joint venture, association, charity or other entity whatsoever, except either (a) in accordance with and as provided in this Agreement or (b) with the written consent of all other Shareholders. All Shares currently owned by the Shareholders or otherwise acquired by the Shareholders subsequent to the date hereof, shall be subject to this Agreement.

Lurie agrees with Blackwell that the provisions of the shareholders' agreements restricting transfers of shares, including the notice requirements and the rights of first refusal, are unambiguous, valid, binding, enforceable, and applicable to the execution and sale by Blackwell. However, Lurie contends that the sale must comply with state law and be a public sale. We disagree. The restrictions imposed by the shareholders' agreements must be enforced first, and only if both the corporations and shareholders declined the rights of first refusal would the sale need to satisfy state laws governing execution sales. See In re Six, 190 B.R. 958, 963 (Bankr. M.D. Fla. 1995); Witte v. Beverly Lakes Investment Co., 715 S.W.2d 286, 292 (Mo. App. 1986).

While Lurie disagrees that the agreements have been complied with, he does agree that the purchase price has been correctly computed pursuant to the agreements.

All of Lurie's arguments boil down to one thing. He claims that he is the seller because it is his stock that is to be executed upon and sold, and that therefore only Lurie himself can properly provide the necessary notice mandated by the terms of the shareholders' agreements. According to Lurie, if he personally did not provide the notice required by the agreements, then the restrictions imposed by the agreements have not been followed and the agreements in total are therefore irrelevant, inapplicable and not controlling. Lurie did not give the notice, of course; Blackwell did.

The shareholders' agreements provide:

4.  Transfer of Shares During Lifetime of Shareholder.

    (a)   Option to Corporation. Except as otherwise provided, no Shareholder shall dispose of all or any part of his Shares, now owned or hereafter acquired by him, to any third party unless and until he shall first give to the Corporation and the other Shareholders at least thirty (30) days' written notice of his intention to make a disposition of his Shares pursuant to a bona fide third party offer ("Offer"). Within the thirty (30) day period, a meeting of the Shareholders shall be called by the Corporation upon not less than five (5) nor more than ten (10) days' notice. Such meeting shall be held at the principal place of business of the Corporation during normal business hours. At such meeting, all of the Shares of the selling Shareholders shall be represented for purposes of determining a quorum; and all of the Shares of the selling Shareholder subject to an Offer (i) shall be offered for sale and (ii) shall be subject to an option to purchase on the part of the Corporation, which option shall be exercised, if at all, at the time of such meeting. If the Corporation elects to purchase the offered Shares, the selling Shareholder shall vote and shall take such action as may be necessary in accordance with the vote of the Shareholders

6

owning a majority of the remaining Shares in order to effectuate the election of the Corporation. The purchase by the Corporation shall be at the price set forth in paragraph 8 hereof and on the terms and conditions provided in paragraph 9 hereof.

(b) Option to Shareholders. If all of the Shares of a selling Shareholder subject to an Offer are not purchased by the Corporation in accordance with the provisions of paragraph 4(a) hereof, then the Shares not so purchased shall be offered for sale and shall be subject to an option on the part of each of the non-selling Shareholders to purchase a Proportionate Share, which option shall be exercised, if at all, at the time of the meeting of Shareholders called pursuant to the provisions of paragraph 4(a) hereof. The purchase shall be at the price set forth in paragraph 8 hereof, and the purchase and sale described in this paragraph 4(b) shall take place as one and the same transaction in the manner on the Closing Date and pursuant to the terms and conditions described in paragraphs 9(a) and 9(b) hereof, subject to the provisions of paragraph 4(c) hereof. If all of the Shares of the selling Shareholder subject to an Offer are not purchased by the Corporation or the non-selling Shareholder, then the selling Shareholder shall have sixty (60) days from the date of the meeting of Shareholders to consummate the sale of such Shares to the third party. If for any reason the sale is not so consummated within said sixty (60) day period, the selling Shareholder's right to sell such Shares in that manner shall terminate and the Shares shall again be subject to this Agreement.

8. Purchase Price.
(a) The purchase price for the Shares of stock of the Corporation being sold during a Shareholder's lifetime pursuant to the provisions of paragraph 4 hereof shall be equal to the lesser of:

i.       the amount set forth in a bona fide offer to purchase such stock by a third party if applicable; or

ii      one and one-half (1-1/2) times the Net Operating Earnings allocable to such shares.

We agree that the shareholders' agreements require that any sale of shares of stock in the corporations requires the seller to give the necessary notice, and refusal rights, to the corporations and the other shareholders. However, the notice requirement is to protect the shareholders, not the seller. The notice provisions are not in place to provide protection to Lurie, but to make sure that the corporations and the other shareholders have the opportunity to exercise the purchase rights granted them by the agreements.

In the case of a sale resulting from execution on shares of stock as a judgment creditor, Blackwell steps into Lurie's shoes. The judgment creditor validly executing on the judgment debtor's property takes the place of the seller for purposes of assuring proper notice to persons or entities necessarily interested or related to the property, in this case by shareholders' agreements. Blackwell gave that notice and, in any case, the corporations and the shareholders have waived any notice deficiency.

We conclude that Lurie simply doesn't have the standing to raise this particular argument. He is not the seller in the sense that he contemplates. Blackwell is the seller of Lurie's shares of stock in Seventeen Seventy-Two, Inc. and Dierdorf and Hart's of St. Louis Union Station, Inc. Lurie is the judgment debtor. He cannot avoid the execution sale merely by refusing to cooperate in the sale.

## CONCLUSION

Blackwell properly assumed the role of seller in executing on the judgment against Lurie and validly served notice and calculated the purchase price according to the requirements of the shareholders' agreements. Lurie's argument that only he can act as the seller is without merit, and his remaining contentions are also irrelevant or without merit and do not warrant further discussion. The bankruptcy court properly overruled Lurie's objection and granted Blackwell's application to sell the stock. Accordingly, the judgment of the bankruptcy court is affirmed.

8

A true copy.

Attest:

        CLERK, U.S. BANKRUPTCY APPELLATE
        PANEL, EIGHTH CIRCUIT.